NOTICE OF ACCEPTANCE OF PRESENTMENT

MICHAEL GOLDBERG,                                          August 10, 2023
In His Capacity As Liquidating Trustee of the
WOODBRIDGE LIQUIDATION TRUST

c/o Jeffrey P. Nolan
10100 Santa Monica Blvd
13th Floor
Los Angeles, California 90067

STATE OF DELAWARE

Notice of Acceptance of Presentment

NEW CASTLE COUNTY

1. I, Secured-Party: Darin-Duane: Baker-El, herein after "Principal/Secured Party/Holder-In-Due-Course", am competent to state to the matters included in this agreement, have first-hand knowledge of the facts and declare that the statements made herein are true and correct to the best of my knowledge and not meant to mislead.

STATEMENT OF FACTS

2. Principal has accepted for value the Complaint and statement of UCC-3 Assignment of Choses in Action filed with the Clerk of the Superior Court of Chattahoochee County, Georgia, UCC File #   026-2022-000031 , dated October 28, 2022 as per Case No. 19-50961 (BLS) (Invoice) with all related endorsements, front and back, from Plaintiff (herein Respondent) in the amount of $431,472.00. (See copy attached)

3. The tender in discharge of this obligation accompanying this Notice dated August 9, 2023 in the amount of $862,945.24, the original of which is hereby tendered by Principal to:

***THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE***

Dear Respondent, in discharge of the accepted for value presentment of account, as stated in the instrument, the instrument tendered is:

***A Bond or Promissory Note***

"Issued under the Authority of, and in Accordance with the official definition of the United States Code, [legal tender], 31 USC 392, 31 USC 5103.
[Except as voided, precluded, excluded, prohibited, or disqualified as a legal tender obligation of The United States by federal or state statute or regulation]. And Issued in Accordance with 31 USC 3123, Emergency Banking Act of (1933) and successor enactments, as "Public Policy", without expansion of credit, debt or obligation upon THE UNITED STATES, for the discharge of "every obligation", "for all debts, public charges, taxes and dues" "TO THE UNITED STATES" and/or its sub-corporate chartered entities as remedy for equity interest recovery upon "the full faith and credit of THE UNITED STATES" for Obligation OF THE UNITED STATES

NOTICE OF ACCEPTANCE OF PRESENTMENT

and sub-corporate chartered entities to the discharge and recovery of the public debt, "dollar for dollar", to the Principals, Prime-Creditors, and Holders in Equity over THE UNITED STATES as Sureties for its obligations, currency and credit. [12 USC 411, 18 USC 8, 12 USC; ch. 6, 38 Stat. 251 Sect 14(a), 31 USC 5118, 3123. with rights protected under the 14th Amendment of the United States Constitution, by the U.S. Supreme Court in United States v. Russell (13 Wall, 623, 627), Pearlman v. Reliance Ins. Co., 371 U.S. 132,136,137 (1962), The United States v. Hooe, 3 Cranch (U.S.)73(1805), and in conformity with the U.S. Supreme Court 79 U.S. 287 (1870), 172 U.S.48 (1898), and as confirmed at 307 U.S. 247(1939).]

This instrument makes no claims except as supported by law.

In accordance with that stated above, of legal necessity, Principal will withdraw this tender in discharge of this obligation upon the citing of any verifiable law or federal regulation that precludes, excludes, prohibits, or disqualifies this presentment as a legal tender obligation of The United States.

4. Please note the following:

"Currency is defined as– coined money and such other banknotes or other paper money as are authorized by law and do in fact circulate from hand to hand as the medium of exchange." Blacks, 5th.

(Title 31 United States Code, Section 392) provides, in part:

"All coins and currencies of the United States, regardless of when coined or issued, shall be legal tender for all debts, public and private, public charges, taxes, duties and dues."

TITLE 31, SUBTITLE IV, CHAPTER 51, SUBCHAPTER I, Sec. 5103.

Legal tender - United States coins and currency (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues. (Emphasis added)

[USC Title 12.221 Definitions – "The terms "national bank" and "national banking association ... shall be held to be synonymous and interchangeable."]

This official definition for "legal tender" was first established in Emergency Banking Act of (1933). This, the same act that suspended the gold standard for our currency and abrogated the right to demand payment in gold, also made Federal Reserve notes and notes of national banks legal tender, both backed by "the credit of the nation".

Public Policy or Public Law (73-10)

JOINT RESOLUTION TO SUSPEND THE GOLD STANDARD AND ABROGATE THE GOLD CLAUSE,

JUNE 5, 1933

NOTICE OF ACCEPTANCE OF PRESENTMENT

H.J. Res. 192, 73rd Cong., 1st Session

Joint resolution to assure uniform value to the coins and currencies of the United States.

(b) As used in this resolution, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term "coin or currency" means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations.

"All coins and currencies of the United States (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations) heretofore or hereafter coined or issued, shall be legal tender for all debts, for public and private, public charges, taxes, duties, and dues," "notes of national banks" or "national banking associations" have continuously been maintained in the official definition of legal tender since June 5, 1933 to the present day, when the term had never been used to define "currency "or "legal tender" before that.

Prior to 1933 the forms of currency in use that were legal tender were many and varied:

-United States Gold Certificates – United States Notes – Treasury Notes – Interest bearing notes –Gold Coins of United States – Standard silver dollars – Subsidiary silver coins – minor coins - Commemorative coins – but the list did not include notes of national banks or national banking associations despite the fact such notes were a common medium of exchange or "currency" and had been, almost since the founding of our banking system, and were backed by United States bonds or other securities on deposit for the bank with the US Treasury.

Further, from the time of their inclusion in the definition, they have been phased out until presently all provisions in the United States Code pertaining to incorporated National Banking institutions issuing, redeeming, replacing and circulating notes have all been repealed:

USC TITLE 12 > CHAPTER 2 - NATIONAL BANKS

SUBCHAPTER V - OBTAINING AND ISSUING CIRCULATING NOTES

• Sec. 101 to 110. Repealed, Pub. L. 103-325, title VI, Sec. 602e5-11, f2-4A, g9, Sept. 23, 1994, 108 Stat. 2292, 2294

SUBCHAPTER VI - REDEMPTION AND REPLACEMENT OF CIRCULATING NOTES

• Sec. 121. Repealed, Pub. L. 103-325, title VI, Sec. 602f4B, Sept. 23, 1994, 108 Stat. 2292

• Sec. 121a. Redemption of notes unidentifiable as to bank of issue

NOTICE OF ACCEPTANCE OF PRESENTMENT

• Sec. 122. Repealed. Pub. L. 97-258, Sec. 5b, Sept. 13, 1982, 96 Stat. 1068

• Sec. 122a. Redeemed notes of unidentifiable issue; funds charged against

• Sec. 123 to 126. Repealed. Pub. L. 103-325, title VI, Sec. 602e12, 13, f4C, 6, Sept. 23, 1994, 108 Stat. 2292, 2293

• Sec. 127. Repealed. Pub. L. 89-554, Sec. 8a, Sept. 6, 1966, 80 Stat. 633

As stated in "Money and Banking", 4th edition, by David H. Friedman, publ. by the American Bankers Association, page 78, "Today commercial banks no longer issue currency, …."

It is clear, federally incorporated banking institutions subject to the restrictions and repealed provisions of Title 12 are not those primarily referred to in the current definition of "legal tender".

The legal statutory and professional definitions of "bank", "banking" and "banker" in the United States Code and Code of Federal Regulations are not those commonly understood, for these terms have made the statutory definition of "Bank" to be:

UCC 4-105 PART 1 "Bank" means "a person engaged in the business of banking,"

12CFRSec. 229.2 Definitions (e) Bank— "the term bank also includes any person engaged in the business of banking,"

12CFR Sec. 210.2 Definitions (d) "Bank means any person engaged in the business of banking."

USC Title 12 Sec. 1813. –Definitions of Bank and Related Terms. – (1) Bank - The term "'bank" – (A) "means any national bank, State bank, District bank, and any Federal branch and insured branch;"

Black's Law Dictionary, 5th Edition, page 133, defines a "Banker" as,

"In general sense, a person that engages in business of banking. In narrower meaning, a private person …; who is engaged in the business of banking without being incorporated. Under some statutes, an individual banker, as distinguished from a "private banker", is a person who, having complied with the statutory requirements, has received authority from the state to engage in the business of banking, while a private banker is a person engaged in banking without having any special privileges or authority from the state."

"Banking"- Is partly and optionally defined as "The business of issuing notes for circulation …, negotiating bills."

Black's Law Dictionary, 5th Edition, page 133, defines "Banking":

"The business of banking, as defined by law and custom, consists in the issue of notes payable on demand intended to circulate as money."

NOTICE OF ACCEPTANCE OF PRESENTMENT

And defines a "Banker's Note" as:

"A commercial instrument resembling a bank note in every particular except that it is given by a private banker or unincorporated banking institution."

Federal Statute does not specifically define "national bank" and "national banking association" in those sections where these uses are legislated on to exclude a private banker or unincorporated banking institution.

It does define these terms to the exclusion of such persons in the chapters and sections where the issue and circulation of notes by national banks has been repealed or forbidden.

"In the absence of a statutory definition, courts give terms their ordinary meaning." Bass, Terri L. v. Stolper, Koritzinsky, 111 F.3d 1325, 7th Cir. Apps. (1996).

As the U.S. Supreme Court noted, "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." See, e.g., United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 -242 (1989); United States v. Goldenberg, 168 U.S. 95, 102 -103 (1897);

"The legislative purpose is expressed by the ordinary meaning of the words used." Richards v. United States, 369 U.S.1 (1962).

Therefore, as noted above, the legal definitions relating to "legal tender" have been written by Congress and maintained as such to be both exclusive, where necessary, and inclusive, where appropriate, to provide for the inclusion of the Principals, Sureties, Prime-Creditors and Holders in Equity over THE UNITED STATES, who, since 1933, have collectively and nationally constituted, by such statutory definitions, a "national bank" or "national banking association" with the right to issue, as legal tender, notes… "upon" "the full faith and credit of THE UNITED STATES" for "Obligation OF THE UNITED STATES and sub-corporate chartered entities to the discharge and recovery of the public debt,… to the Principals, Prime-Creditors, and Holders in Equity over THE UNITED STATES as Sureties for its obligations, currency and credit.", as remedy for equity interest recovery over US Corporate public debt due them.

A brief review of the historical events that led up to the authorization and use of this type of instrument, which is not familiar to most or in common use today, is important:

During the financial crisis of the depression, in 1933 substance of gold, silver and real money was removed as a foundation for our financial system.

NOTICE OF ACCEPTANCE OF PRESENTMENT

In its place the substance of the American citizenry: their real property, wealth, assets and productivity that belongs to them was, in effect, 'pledged' by the government and placed at risk as the collateral for US debt, credit and currency for commerce to function.

This is well documented in the actions of Congress and the President at that time and in the Congressional debates that preceded the adoption of the reorganization measures:

Senate Document No. 43, 73rd Congress, 1st Session, stated,

"Under the new law the money is issued to the banks in return for Government obligations, bills of exchange, drafts, notes, trade acceptances, and banker's acceptances. The money will be worth 100 cents on the dollar, because it is backed by the credit of the nation. It will represent a mortgage on all the homes and other property of all the people in the Nation."

Which, of course, lawfully belongs to these private citizens.

The National Debt is defined as "mortgages on the wealth and income of the people of a country." (Encyclopedia Britannica, 1959.) Their wealth … their income.

On December 23, 1913, Congress had passed "An Act to provide for the establishment of Federal reserve banks, to furnish an elastic currency, to afford a means of rediscounting commercial paper, to establish a more effective supervision of banking in the United States, and for other purposes." The Act is commonly known as the "Federal Reserve Act."

One of the purposes for enacting the Federal Reserve Act was:

(3) To authorize "hypothecation" of obligations including "United States bonds or other securities which Federal reserve Banks are authorized to hold" under Section 14(a);

12 USC; ch. 6, 38 Stat. 251 Sect 14(a)

"Every Federal reserve bank shall have power:

(a) To deal in gold coin and bullion at home or abroad, to make loans thereon, exchange Federal reserve notes for gold, gold coin, or gold certificates, and to contract for loans of gold coin or bullion, giving therefore, when necessary, acceptable security, including the hypothecation of United States bonds or other securities which Federal reserve banks are authorized to hold;"

The term "hypothecation" as stated in Section 14(a) of the Act is defined:

"1. Banking. Offer of stocks, bonds, or other assets owned by a party other than the borrower as collateral for a loan, without transferring title. If the borrower turns the property over to the lender who holds it for safekeeping, the action is referred to as a pledge. If the borrower retains possession but gives the lender the right to sell the property in event of default, it is a true hypothecation.

NOTICE OF ACCEPTANCE OF PRESENTMENT

2. Securities. The pledging of negotiable securities to collateralize a broker's margin loan. If the broker pledges the same securities to a bank as collateral for a broker's loan, the process is referred to as rehypothecation."

[Dictionary of Banking Terms, Fitch, pg. 228 (1997)]

As seen from the definitions, in hypothecation there is equitable risk to the actual owner.

Section 16 of the current Federal Reserve Act, which is codified at 12 USC 411, and 18 USC 8 declares that "Federal Reserve Notes" are "obligations of the United States."

TITLE 12 > CHAPTER 3 > SUBCHAPTER XII > Sec. 411.

Sec. 411. - Issuance to reserve banks; nature of obligation; redemption

Federal Reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal Reserve banks through the Federal Reserve agents as hereinafter set forth and for no other purpose, are authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal Reserve banks and for all taxes, customs, and other public dues.

TITLE 18 > PART I > CHAPTER 1 > Sec. 1. > Sec. 8.

Sec. 8. - Obligation or other security of the United States defined

*The term "obligation or other security of the United States" includes all bonds, certificates of indebtedness, national bank currency, Federal Reserve notes, Federal Reserve bank notes,coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and canceled United States stamps.*

*The "full faith and credit" of the United States: which is the substance of the American citizenry: their real property, wealth, assets and productivity that belongs to them, was thereby hypothecated by the United States to its obligations, as well as re-hypothecated by the Federal Reserve Banks for the issuance and emission of 'bills of credit' (Federal Reserve Notes) as legal tender "for all taxes, customs, and other public dues."*

The commerce and credit of the nation continues on today under bankruptcy reorganization or financial reorganization, as it has since 1933, still backed by the assets and wealth of the American citizenry: at risk for the government's obligations and currency.

Constitutionally and in the laws of equity, the United States could not borrow or pledge the property and wealth of its private citizens, put at risk as collateral for its currency and credit,

NOTICE OF ACCEPTANCE OF PRESENTMENT

without legally providing them an equitable and orderly remedy for recovery of what is due them on their assets and wealth that are at risk.

This principle is well established in English common law and in the history of American jurisprudence.

The 14th amendment provides: "no person shall be deprived of…property without due process of law".

And Courts have long ruled to have one's property legally held as collateral or surety for a debt even when he still owns it and still has it is to deprive him of it since it is at risk and could be lost for the debt at any time.

The rights of a surety to recovery on his risk or loss when standing for the debts of another was reaffirmed again as late as 1962 in Pearlman v. Reliance Ins. Co., 371 U.S. 132 when the Supreme Court said:

*"… sureties compelled to pay debts for their principal have been deemed entitled to reimbursement, even without a contractual promise …And probably there are few doctrines better established. …"*

Black's Law Dictionary, 5th edition, defines "surety":

"One who undertakes to pay or to do any other act in event that his principal fails therein. Everyone who incurs a liability in person or estate for the benefit of another, without sharing in the consideration, stands in the position of a 'surety'."

So, these obligations for recovery due the Principals, Prime-Creditors and Holders in Equity over THE UNITED STATES as Sureties for its obligations, currency and credit are part of the public debt:

TITLE 31 > SUBTITLE IV > CHAPTER 51 > SUBCHAPTER II > Sec. 5118

(2) "public debt obligation" means a domestic obligation issued or guaranteed by the United States Government to repay money or interest.

Title 31 USC 3123 makes a statutory pledge of the United States government to:

TITLE 31, SUBTITLE III, CHAPTER 31, SUBCHAPTER II, Sec. 3123.

- Payment of obligations and interest on the public debt

- (a) The faith of the United States Government is pledged to pay, in legal tender, principal and interest on the obligations of the Government issued under this chapter.

NOTICE OF ACCEPTANCE OF PRESENTMENT

As we see, in the laws of equity, constitutionally and statutorily, the United States can not borrow or pledge the property and wealth of its private citizens, put at risk as collateral for its currency and credit, without legally giving them remedy for recovery of what is due them on their risk.

The government can do this with our implied consent, because it has provided us such a remedy.

The provisions for this are found in the same act of "Public Policy" (public law 73-10), that suspended the gold standard for our currency, abrogated the right to demand payment in gold, and then redefined the terms "coin or currency" and "legal tender" to include federal reserve notes and "notes of national banking associations", both backed by the same thing: the credit of the nation, i.e., the real substance of the American citizenry.

Since the institution of these events, for practical purposes of commercial exchange, there has been no actual money in circulation by which debt owed from one party to another can be repaid.

All US currency since that time is only credit against the real property, wealth and assets belonging to the private American people, taken and/or 'pledged' by THE UNITED STATES to its secondary creditors as security.

Federal Reserve Notes, although made legal tender for all debts public and private in the reorganization, can only discharge a debt. Debt must be "paid" with value or substance (i.e. gold, silver, barter or a commodity). For this reason, the EMERGENCY BANKING ACT of (1933), which established the "public policy" of our current monetary system, repeatedly uses the technical term of "discharge" in conjunction with "payment" in laying out public policy for the new system. A debt currency system cannot pay debt.

So, from that time to the present, commerce in the corporate UNITED STATES and among sub-corporate subject entities has had only bank notes and other debt note instruments by which debt can be discharged and transferred in different forms. The unpaid debt, created and/or expanded on by the plan now carries a public liability for collection in that when debt is discharged with debt instruments, (Federal Reserve Notes included), by our commerce, debt is inadvertently being expanded instead of being cancelled, thus increasing the public debt. A situation such as this is potentially fatal to any economy.

The Congress and government officials who orchestrated the public laws and regulations that made the financial reorganization anticipated the long-term effect of a debt based financial system which many in government feared, and which we face today in servicing the interest on trillions upon trillions of dollars in US Corporate public debt and in this same act made provision in the recovery remedy provided to its Prime-creditors to simultaneously resolve this problem as well.

As has been said, all US currency since that time is only credit against the real property, wealth and assets belonging to the private American people, taken and/or 'pledged' by THE UNITED STATES to its secondary creditors as security for its obligations. Those backing the nation's

credit and currency could not recover what was due them by anything drawn on Federal Reserve notes without expanding their risk and obligation to their own selves. Any recovery payments backed by this currency would only increase the public debt its citizens were collateral for, which an equitable remedy was intended to reduce, and in equity would not satisfy anything. And there was no longer actual money of substance to pay anybody.

Since it is, in fact, the real property, wealth and assets of the American citizenry that is the substance backing all the other obligations, currency and credit of THE UNITED STATES and such currencies could not be used to reduce its obligations for equity interest recovery to its Principals and Sureties, HJR-192 made the notes of such a "national banking association" of the Principals, Sureties, Prime-Creditors and Holders in Equity over THE UNITED STATES on a par with its other currency and legal tender obligations and declared, ..."every provision... which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency... is declared to be against Public Policy; and no such provision shall be … made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any such coin or currency which at the time of payment is legal tender for public and private debts."

And thus provided as "Public Policy" the means for discharge and recovery on US Corporate public debt due the Principals, and Holders of THE UNITED STATES without expansion of credit, debt or obligation on THE UNITED STATES or these its prime-creditors in the discharge of "every obligation", "including every obligation OF and TO THE UNITED STATES", "...allowing those backing the US financial reorganization to recover on it by discharging an obligation they owed TO THE UNITED STATES or its sub-corporate entities, against that same amount of obligation OF THE UNITED STATES owed to them; by the right to issue, as legal tender, notes..." upon "the full faith and credit of THE UNITED STATES" for Obligation OF THE UNITED STATES and sub-corporate chartered entities to the discharge and recovery of the public debt, "dollar for dollar", to the Principals, Prime-Creditors, and Holders in Equity over THE UNITED STATES as Sureties for its obligations, currency and credit." This, as remedy provided by Congress, for the orderly recovery of equity interest on US Corporate public debt due the Sureties, Principals, and Holders of THE UNITED STATES, discharging that portion of the public debt without expansion of credit, debt or obligation on these, its prime-creditors, was intended to satisfy equitable remedy, gaining for each bearer of such note, discharge of obligation equivalent in value 'dollar for dollar' to any and all "lawful money of the United States".

And when tendered in the discharge and recovery of the public debt to its Principals, discharging those obligations OF THE UNITED STATES and sub-corporate chartered entities to its Holders against the obligations of Its Holders in Equity to them, without expansion of credit, debt or obligation on THE UNITED STATES or these its prime-creditors, in accordance with "Public Policy" established in the Emergency Banking Act and 31 USC 5103, such instruments are, of necessity, "legal tender for all debts, public charges, taxes, and dues."

Further, Title 18 Sect. 8 also defines "obligation of the United States" to include such "national bank currency".

TITLE 18 > PART I > CHAPTER 1 > Sec. 1. > Sec. 8.

Obligation or other security of the United States defined –

The term "obligation or other security of the United States" includes all bonds, certificates of indebtedness, national bank currency, Federal Reserve notes, Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and canceled United States stamps.

As stated, there presently is no "national bank currency" of federally incorporated banking institutions.

The Banking Act of 1935 retired national bank currency in favor of Federal Reserve notes.

As quoted in "Money and Banking" by Friedman ... "Today commercial banks no longer issue currency ..." Yet, "national bank currency" is still included in the official definition for Obligation of the United States.

It could be argued that it is retained to honor those notes yet unredeemed and technically still in circulation. While this may be true, it is also true the definition includes not only "obligation of the United States" "drawn by" authorized officers of the United States", issued, therefore, by the government; but also includes.... "...all bonds, certificates of indebtedness, and national bank currency ... drawn upon authorized officers of the United States."

Included in this is the Secretary of the Treasury in his duty as keeper of the public debt:

Title 31 USC 3123 - Payment of obligations and interest on the public debt

"The Secretary of the Treasury shall pay interest due or accrued on the public debt."

And includes any such notes or currency drawn upon him as an "authorized officer of the United States," by whoever may have the right and power to do so ... "issued under any Act of Congress."

This includes the rights established under "public policy" by (public law 73-10) and 31 USC 5103 to the prime-creditors and holders in equity of US Corporate public debt to issue as legal tender, notes.......'upon "the full faith and credit of THE UNITED STATES" for Obligation OF THE UNITED STATES and sub-corporate chartered entities to the discharge and recovery of the public debt, "dollar for dollar", to the Principals, Prime-Creditors, and Holders in Equity over THE UNITED STATES as Sureties for its obligations, currency and credit.'

NOTICE OF ACCEPTANCE OF PRESENTMENT

By these statutory provisions, such notes, issued by the Principals, Sureties, and prime-Holders of US Corporate public debt as legal tender obligations of THE UNITED STATES for recovery of equity interest due, are the "national bank currency", backed as "obligations of THE UNITED STATES", and primarily allowed for in these statutes.

Although this has been public policy as a remedy for the discharge of debt in conjunction with removal of gold, silver and real money as legal tender currency by the same act of public policy in 1933, we acknowledge it has been a difficult concept to communicate and for others to accept and understand what to do under it, so it has never gained common use, and for obvious reasons the government has discouraged public understanding of the remedy and recovery under it and therefore it is little known and not generally accessed by the public. But it is just as much public policy today for the discharge and recovery of the public debt to those to whom it is due as it was in 1933, and is still there as a remedy for those who need to access it.

And, as noted above, in accordance with "Public Policy" established in the Emergency Banking Act, respondent, as obligee, may not require of the Principal a tender of any particular kind of coin or currency in place of it.

*We state again, this instrument makes no claims except such claims as are supported by law.*

Principal will withdraw this tender in discharge of this obligation upon the verifiable citing of any law or federal regulation that precludes, excludes, prohibits, or disqualifies this presentment as a legal tender obligation of The United States, and is of full belief that none exists.

You may wish to consult with your attorneys on these points of law. Please be advised that their lack of familiarity with this matter does not constitute evidence or documentation in law that what is presented here is not true or binding on all parties. To expedite the final settling of this account, any legal corrections or clarifications of what is here stated must be supported by the appropriate state or federal law(s) and/or regulations on which it is based.

This bankers acceptance note may now be used in the discharge of your obligations, "for all debts, public charges, taxes, and dues", negotiated and exchanged in the course of business with other obligations of the United States or commercial paper of private corporations as bonds, certificates, notes, or other security instruments commonly traded, exchanged and tendered in this way by yourself, or received by your bank as an asset on deposit from you, held as an obligation OF THE UNITED STATES to your bank, to be exchanged and negotiated in these ways or by whomever may become the bearer of it.

Under this remedy for discharge of the public debt and recovery to its Principals and Holders, TWO debts that would have been discharged in Federal Reserve debt note instruments or checks drawn on the same, equally expanding the public debt by those transactions, are discharged against a single public debt of the Corporate UNITED STATES and its sub-corporate entities to a prime-creditor without the expansion and use of Federal Reserve debt note instruments as currency and credit without the expansion of debt and debt instruments in the monetary system

NOTICE OF ACCEPTANCE OF PRESENTMENT

and the expansion of the public debt as burden upon the entire financial system and its Principals and Holders in Equity the recovery remedy was intended to relieve.

However used, if or when negotiated, it is our knowledge and belief that the original accepted for value presentment of debt attached to the instrument needs to remain attached in any transfer to another party.

As a statutory legal tender obligation of THE UNITED STATES, it does not require endorsement for negotiation to another party, but due to its being unfamiliar in public commerce, space is provided for such endorsement to make applicable certain laws regarding negotiable instruments for your protection and to facilitate your ability to negotiate it, as it is also negotiable by definition. However, this does not change its status as a statutory legal tender obligation of THE UNITED STATES.

If tendered to a bank, prepare a deposit slip. Make a copy of the entire package for your records, and deliver all the original documents with the deposit slip and the incorporated "MEMORANDUM TO DEPOSITING INSTITUTION" to your bank. Your bank should credit your account immediately upon your deposit of this instrument. If your bank informs you that they have dishonored this banker's acceptance note, please notify me immediately. If your bank does not send you a notice of dishonor but fails to credit your account, notify me immediately.

Please note regarding your bank:

12CFR229.21 Availability of Funds and Disclosure of Funds Availability Policies

Sec. 229.21 Civil Liability.

(a) Civil liability. A bank that fails to comply with any requirement imposed under subpart B, and in connection therewith, subpart A, of this part or any provision of state law that supersedes any provision of subpart B, and in connection therewith, subpart A, with respect to any person is liable to that person in an amount equal to the sum of—

(1) Any actual damage sustained by that person because of the failure;

(2) Such additional amount as the court may allow, except that-- (i) In the case of an individual action, liability under this paragraph shall not be less than $100 or greater than $1,000.

It is your responsibility, as a bank customer, to establish with your bank the points of banking law requiring them to do this. This instrument is tendered in good faith in discharge and settlement of this obligation to our mutual benefit.

NOTICE OF ACCEPTANCE OF PRESENTMENT

5. Caveat. In the absence of a clear written contract between us as to the manner of discharge of this debt, my statement of facts and its addendums will result in a clear understanding and meeting of the minds of the parties clearly identified and will stand as truth in commerce.

6. Statement of Account: By authority of law and federal regulation herein noted the tender in discharge of this obligation you have received is a statutory legal tender obligation of THE UNITED STATES and upon proof of receipt constitutes immediate discharge of this debt up to its face amount unless you or your banking institution can show you have cause to dispute this with verifiable Federal or state statute or regulation.

Therefore, as of this date, upon tender to you the Respondent, the amount of unpaid obligations for UCC-3, Assignment of Choses in Action, **Case No. 19-50961 (BLS),** filed with the Clerk of the Superior Court of Chattahoochee County, Georgia, UCC File #   026-2022-000031  , for all transactions with Respondent are zero.

Statement of Account date: November 27, 2019 (Complaint filing date)

Balance of Charges thru $   431,472.00   .

Tender in Discharge of this Obligation $   *862,945.24*   .

Certified Registration # RE423712835US – (EIN #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)

Ending Balance of Charges: $0

The balance shown above reflects my good faith Statement of this Account. Any over payment may be refunded. Your Account Representative or his designee may correct the statement. If you determine the balance is different than as shown above, your documented correction must be returned to me within the two-weeks' time allowed for holding and settlement of this instrument by your banking institution or other parties to whom you may tender it in discharge of obligation or within thirty (30) days of your receipt of this Statement of Account.

(UCC § 9-210) Delaware Code, Title 6 Commerce and Trade, Subtitle I Uniform Commercial Code, § 9-210 **Request for accounting; request regarding list of collateral or statement of account.**

(b) Duty to respond to requests. – Subject to subsections (c), (d), (e), and (f), a secured party ......shall comply with a request within 14 days after receipt:

   (2) in the case of a request regarding a list of collateral or a request regarding a statement of account, by authenticating and sending to the debtor an approval or correction,

   (Such documents must include records of evidence or documentation in law authenticating that in fact the bankers acceptance note tendered to you in settlement of this account has been dishonored by your banking institution or other obligee or endorser on the authority of Federal or state statute or regulation as being precluded, excluded, prohibited, or disqualified as a legal tender obligation of The United States.)

NOTICE OF ACCEPTANCE OF PRESENTMENT

Please send these documents along with a short letter signed in blue ink by a title-identified party asserting your claim if you would wish to dispute my statement of account. Any unsigned, anonymous letter must be ignored by me as a matter of law, since someone must take responsibility for asserting the validity of your claim that the tender of this presentment has not legally discharged this obligation by the citing of any such law or federal regulation that precludes or disqualifies this presentment as a legal tender obligation of The United States.

Note: The Uniform Commercial Code in its entirety is also codified as state law in all 50 states and as such is included here by reference for any state under whose jurisdiction you are registered.

In the event you need additional information or instruction in processing the instrument please do not hesitate to contact me by mail or email: (darinbakerking@gmail.com)

Thank you for your prompt handling of this matter.

Respectfully submitted,

Secured-Party: Creditor's Name

_All unalienable rights reserved_

_DARIN - DUANE : BAKER - EL_ , Agent for

DARIN DUANE BAKER©

Caution to Obligees, please be advised:

By authority of law and federal regulation noted in the accompanying "Notice of Acceptance of Presentment" the tender in discharge of this obligation you have received is a statutory legal tender obligation of THE UNITED STATES and upon proof of receipt constitutes immediate discharge of this debt up to its face amount and/or the amount shown on attached presentment unless you or your banking institution can show you have cause to dispute this by verifiable Federal or state statute or regulation.

This instrument makes no claims except such claims as are supported by law.

Accordingly, this tender in discharge of this obligation will be withdrawn upon the verifiable citing of any Federal or state law or regulation that precludes, excludes, prohibits, or disqualifies this presentment as a legal tender obligation of The United States.

If you return or otherwise dishonor your obligor's tender in discharge of this obligation, WITHOUT establishing a basis in law, the obligation of your obligor as endorser of this instrument to make good the instrument to you "may not be enforced," and "the liability" to you of your obligor as endorser for the face value of the instrument is discharged":

Delaware Code, Title 6 Commerce and Trade, Subtitle I Uniform Commercial Code, § 3-503 **Notice of dishonor.**

NOTICE OF ACCEPTANCE OF PRESENTMENT

(a) The obligation of an indorser stated in Section 3-415(a) and the obligation of a drawer stated in Section 3-414(d) may not be enforced unless (i) the indorser or drawer is given notice of dishonor of the instrument complying with this section...

Delaware Code, Title 6 Commerce and Trade, Subtitle I Uniform Commercial Code, § 3-415 **Obligation of indorser.**

(c) "If notice of dishonor of an instrument is required by Section 3-503 and notice of dishonor complying with that section is not given to an indorser, the liability of the indorser under subsection (a) is discharged."

FURTHER, if you reject or refuse this presentment by your obligor in tender of discharge of an obligation, "there is discharge" of the obligation to you "of the amount of the tender,"

Delaware Code, Title 6 Commerce and Trade, Subtitle I Uniform Commercial Code, § 3-501 **Presentment.**

(3) Without dishonoring the instrument, the party to whom presentment is made may (A) return the instrument for lack of a necessary indorsement, or (B) refuse payment acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

Delaware Code, Title 6 Commerce and Trade, Subtitle I Uniform Commercial Code, § 3-603 **Tender of payment.**

(b) "If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation".

When such as a Bankers Acceptance Note is tendered in discharge, negotiation or exchange of an obligation, an obligee, such as yourself, may not require of the bearer tender of other particular kind of coin or currency in place of it:

**EMERGENCY BANKING ACT of 1933** (public law 73-10) states: "every provision.... which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency.... is declared to be against Public Policy; the term 'coin or currency' means coin or currency of the United States, including.... notes of ... national banking associations".

(See also 31 USC 5103 – legal tender) Refusal or wrongful dishonor of this presentment in exchange or discharge of obligation may result in your loss of recourse against the endorser of the instrument to you.

MEMORANDUM TO DEPOSITING INSTITUTION

Please take the time to first carefully read the accompanying Notice of Acceptance of Presentment and its detailed discussion we have provided your banking customer.

By authority of law and federal regulation here noted in the accompanying Notice of Acceptance of Presentment this Bankers Acceptance Note presented by your customer for deposit is a

NOTICE OF ACCEPTANCE OF PRESENTMENT

statutory legal tender obligation of THE UNITED STATES. And in accordance with "Public Policy" established in HJR-192, and in accordance with 31 USC 5103 and 18 USC 8, such instruments are "national bank currency" and thereby 'coin or currency of the United States' by statutory definition (see again the accompanying Notice of Acceptance of Presentment). And further, by the terms of state law, The Uniform Commercial Code and the Code of Federal Regulations, are fully negotiable as "legal tender for all debts, public charges, taxes, and dues.", and must so be received by your institution for deposit in accordance with your customer agreement unless your banking institution can show you have cause to dispute this from Federal or state statute or regulation.

This instrument makes no claims except such claims as are supported by law or any such claim as may be voided, precluded, excluded, prohibited, or that disqualifies this presentment as a legal tender obligation of The United States by federal or state statute or regulation.

Accordingly, this presentment will be withdrawn only upon the citing of any verifiable law or federal regulation that precludes, excludes, prohibits, or disqualifies this presentment as a legal tender obligation of The United States.

- Remainder of page intentionally blank -

Bill Number: RR055151172US

Invoice Number: Case No. 19-50961 (BLS)

UCC REGISTRATION Number: 026-2022-000031

Date: August 10, 2023

## REGISTERED BILL OF EXCHANGE



## NON-NEGOTIABLE

IN ACCORDANCE WITH Public Law (73-10), Chapter 48, 48 Sect.112; 50 USC 4305 (b)(2) and Uniform Commercial Codes 1-104, 9-105

Pay To:    THE UNITED STATES BANKRUPTCY COURT                  $    862,945.24
           FOR THE DISTRICT OF DELAWARE

          Eight hundred sixty two thousand nine hundred and forty five dollars and  24/100

Drawee:
Janet Yellen, Secretary                          Debtor's Signature: DARIN DUANE BAKER©,
Department of the Treasury                       Authorized Representative,
1500 Pennsylvania Avenue, NW                     Living, principal, Grantor, Trustee
Washington, DC 20220

                                                 Darin-Duane: Baker-El "As Good As Aval"

Charge back to the Drawer's UCC Contract Trust
Account Number 303841423 for this value specified on
this Bill of Exchange, and charge the Drawer's account
For the fees necessary for the securing and registration,
For the priority exchange for the tax exemption to
Discharge the public liability of the Drawer's personal
possessions.  Command the memory of account number          AUTHORIZED SIGNATURE
 303841423  to reflect the charges herewith ordered.        RE423712835US

Ms. Yellen,

        Please exchange my private credit in the amount written above and pay General Bond number
RR055151169US, per Case No. 19-50961 (BLS) attached, to  THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF DELAWARE  pursuant to Public Law (73-10) EMERGENCY
BANKING ACT of 1933, Chapter 48,48 Sect.112 and 31 CFR §5118 and 50 USC 4305 (b)(2), dollar for
dollar to adjust my accounts accordingly.  Please send me a summary statement of my account upon
completion of this transaction.  If you need assistance in this matter or other information, you may contact
me at the address given.  Until then, I shall remain,

Sincerely,

Darin-Duane: Baker-El

FILED & RECORDED
Tuesday, August 8, 2023 1:41:30 PM
File Number: 026-2023-000032
Tami Wade
Chattahoochee County Clerk of Superior Court

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
Darin-Duane: Baker-El

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
darinbakerking@gmail.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

⌐Darin-Duane: Baker-El
C/O 12020 Magnolia Blvd, #3
└Valley Village, CALIFORNIA [91607]⌐

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**COPY**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
026-2022-000031

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum
(Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party(y)(ies) authorizing this Termination Statement

**3.** ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

**4.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the
additional period provided by applicable law

**5.** PARTY INFORMATION CHANGE:

Check one of these two boxes:   **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6.** CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **6b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

OR

**7.** CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **7b. INDIVIDUAL'S SURNAME** | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | **SUFFIX** |

OR

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** COLLATERAL CHANGE:   Check only one box:   ☑ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:   *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

The following is part of the original filing, as all proceeds, products, and fixtures of the attached Offering is accepted for value and is exempt from levy and is the personal property of the Debtor, whereby, the Secured Party holds all interest including the attached Promissory Note which is placed in the Commercial Chamber for Commercial Registration of the equal exchange. The equal exchanges are in accord with Public Law (71-10) Chapter 48, 48 Sect. 112, 31 USC §5118 and UCC 9-105. IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE Chapter 11 Case No. 17-12560 (BLS) Adversary Proceeding Case No. 19-50961 (BLS); GENERAL BOND Registration No.RR055151169US.

**9.** NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **9b. INDIVIDUAL'S SURNAME**<br>Baker-El | **FIRST PERSONAL NAME**<br>Darin- | **ADDITIONAL NAME(S)/INITIAL(S)**<br>Duane: | **SUFFIX** |

OR

**10.** OPTIONAL FILER REFERENCE DATA:

2:...961-JKS Doc 38-1 Filed 08/21/23 Page 20 of 71

FILED & RECORDED
Tuesday, August 8, 2023 1:56:46 PM
File Number: 026-2023-000033
Tami Wade
Chattahoochee County Clerk of Superior Court

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**COPY**

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
Darin-Duane: Baker-El

B. E-MAIL CONTACT AT SUBMITTER (optional)
darinbakerking@gmail.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Darin-Duane: Baker-El
C/O 12020 Magnolia Blvd, #3
Valley Village, CALIFORNIA [91607]

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. |
|---|---|
| 026-2022-000031 | ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13. |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. **PARTY INFORMATION CHANGE:**

Check one of these two boxes: ☐ This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
|---|---|---|---|

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. **COLLATERAL CHANGE:** Check only one box: ☐ ADD collateral ☑ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

Indicate collateral:

The following is a partial release of the Debtor's property on account to the Clerk of the Superior Court for IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE Chapter 11 Case No. 17-12560 (BLS) Adversary Proceeding Case No. 19-50961 (BLS) for the equal exchange for the property on the list attached, which is accepted for value and is exempt from levy. Please release all proceeds, products, accounts, fixtures and orders/adjustments to the Debtor immediately. The GENERAL BOND attached is the vehicle for the equal exchange.
-continued on addendum-

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Baker-El | Darin- | Duane: | |

10. OPTIONAL FILER REFERENCE DATA:

## UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS

| 11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form |
|---|
| **26-2022-000031** |

| 12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form |
|---|

12a. ORGANIZATION'S NAME

**COPY**

OR

12b. INDIVIDUAL'S SURNAME
**Baker-El**

FIRST PERSONAL NAME
**Darin-**

ADDITIONAL NAME(S)/INITIAL(S)
**Duane:**

SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME
**DARIN DUANE BAKER, CESTUI QUE TRUST**

OR

| 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

14. ADDITIONAL SPACE FOR (CHECK ONE BOX):  [✓] ITEM 8 (Collateral)  OR  [ ] OTHER INFORMATION (Please Describe)

GENERAL BOND Registration No. RR055151169US

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
Chapter 11 Case No. 17-12560 (BLS) Adversary Proceeding Case No. 19-50961 (BLS):
$862,945.24

Exchange: -$862,945.24

Balance due on account: $0.00

| 15. This FINANCING STATEMENT AMENDMENT: | 17. Description of real estate: |
|---|---|
| [ ] covers timber to be cut   [ ] covers as-extracted collateral   [ ] is filed as a fixture filing | |
| 16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest): | |

18. MISCELLANEOUS:

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, et al.,[1] | Case No. 17-12560 (BLS) |
| | (Jointly Administered) |
| Remaining Debtors. | |

| | |
|---|---|
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, | |
| Plaintiff, | Adversary Proceeding Case No. 19-_____ (BLS) |
| vs. | |
| DARIN BAKER, | |
| Defendant. | |

## COMPLAINT OBJECTING TO CLAIMS AND COUNTERCLAIMING FOR AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS, FOR EQUITABLE SUBORDINATION, FOR SALE OF UNREGISTERED SECURITIES, FRAUD, AND FOR AIDING AND ABETTING FRAUD

---

[1]   The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).

The Woodbridge Liquidation Trust (the "Liquidation Trust" or "Plaintiff"), formed

pursuant to the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of

Companies, LLC and Its Affiliated Debtors* dated August 22, 2018 (Bankr. Docket No. 2397) (as

it may be amended, modified, supplemented, or restated from time to time, the "Plan"[2]), as and

for its *Complaint Objecting to Claims and Counterclaiming for Avoidance and Recovery of

Avoidable Transfers, for Equitable Subordination, for Sale of Unregistered Securities, for Fraud,

and for Aiding and Abetting Fraud* (this "Complaint") against Darin Baker ("Defendant"),

alleges as follows:

## NATURE OF THE ACTION

1.     Since at least August 2012 until shortly before they sought bankruptcy protection,

Woodbridge Group of Companies, LLC and its many hundreds of debtor affiliates (collectively,

the "Debtors") were operated by their founder and principal, Robert Shapiro ("Shapiro"), as a

Ponzi scheme. As part of this fraud, Shapiro and his lieutenants utilized the Debtors to raise over

one billion dollars from approximately 10,000 investors as either Noteholders or Unitholders

(collectively, "Investors").

2.     Those Investors, many of whom were elderly, often placed a substantial

percentage of their net worth (including savings and retirement accounts) with the Debtors and

now stand to lose a significant portion of their investments and to be delayed in the return of the

remaining portion. The quality of the Investors' lives will likely be substantially and adversely

affected by the fraud perpetrated by Shapiro and his lieutenants.

3.     The purpose of this lawsuit is (i) to object to the Claim (defined below) so that

Defendant is not further compensated at the expense of legitimate creditors for activities that

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

advanced the Ponzi scheme and further drove the Debtors into insolvency, and to the extent the Claim, or any new or amended claims, survive, to equitably subordinate them, (ii) to avoid and recover monies previously paid to Defendant by reason of these activities, on the grounds that such payments were preferential, actually fraudulent, and/or constructively fraudulent; and (iii) to hold Defendant liable for sale of unregistered securities, for fraud, and for aiding and abetting fraud.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334. Counts I, II. III, IV, V, VI, VII, and VII of this adversary proceeding are core within the meaning of 28 U.S.C. § 157(b)(2)(B), (C), (F), and (H). Counts VII, IX, and X are non-core. Plaintiff consents to entry of final orders or judgment by this Court on all counts.

5. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

### *The Liquidation Trust*

6. On December 4, 2017 (the "Initial Petition Date"), certain of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code. Other of the Debtors followed with their own voluntary cases (collectively with those of the original Debtors, the "Bankruptcy Cases") within the following four months (each such date, including the Initial Petition Date, a "Petition Date").

7. On October 26, 2018, this Court entered an order confirming the Plan (Bankr. Docket No. 2903).

2

8.    The Plan provides for, *inter alia*, the establishment of the Liquidation Trust on the Effective Date of the Plan for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement. *See* Plan §§ 1.75, 5.4.

9.    The Effective Date of the Plan occurred on February 15, 2019.

10.    On February 25, 2019, the Court entered an order closing the Bankruptcy Cases of all Debtors except Woodbridge Group of Companies, LLC and Woodbridge Mortgage Investment Fund 1, LLC (together, the "Remaining Debtors"). The Remaining Debtors' Bankruptcy Cases are jointly administered under Case No. 17-12560 (BLS).

11.    On the Effective Date, the Liquidation Trust was automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets. *See* Plan § 5.4.3. Further, the Liquidation Trust, as successor in interest to the Debtors, has the right and power to file and pursue any and all "Liquidation Trust Actions" without any further order of the Bankruptcy Court. *Id.* § 5.4.15. "Liquidation Trust Actions" include, *inter alia*, "all Avoidance Actions and Causes of Action held by the Debtors or the Estates ...." *Id.* § 1.76.

12.    In addition to its status as successor in interest to the Debtors and their estates, the Liquidation Trust also holds claims held by Investors who elected to contribute to the Liquidation Trust certain causes of action that those Investors possess against individuals such as Defendant (the "Contributed Claims"). *Id.* § 1.28 (defining "Contributed Claims" to include "All Causes of Action that a Noteholder or Unitholder has against any Person that is not a Released Party and that are related in any way to the Debtors, their predecessors, their respective affiliates, or any Excluded Parties, including ... all Causes of Action based on, arising out of, or related to the marketing, sale, and issuance of any Notes or Units; ... all Causes of Action based on, arising

3

out of, or related to the misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and … all Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of, any of the conduct described in the Disclosure Statement, including in respect of any alleged fraud related thereto").

## *Defendant*

13.    Defendant is an individual residing in the State of California. Upon information and belief, Defendant acted as a financial advisor and/or broker that sold securities to the public and provided investment services.

14.    Defendant sold Notes and Units to unsuspecting Investors, created marketing materials and sales scripts to facilitate the sale of Notes and Units to unsuspecting Investors (often targeting unsophisticated, elderly investors with Individual Retirement Accounts). In so doing, Defendant made materially false and fraudulent statements to induce Investors to provide money. In connection with such conduct, Defendant, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## **FACTUAL BACKGROUND**

### *The Fraud*

15.    At least since July 2012 until shortly before they sought bankruptcy protection, the Debtors were operated as a Ponzi scheme. As this Court explained in its order confirming the Plan:

> The evidence demonstrates, and the Bankruptcy Court hereby finds, that (i) beginning no later than July 2012 through December 1, 2017, Robert H. Shapiro used his web of more than 275 limited liability companies, including the Debtors, to conduct a massive Ponzi scheme raising more

4

than $1.22 billion from over 8,400 unsuspecting investors nationwide;
(ii) the Ponzi scheme involved the payment of purported returns to
existing investors from funds contributed by new investors; and (iii) the
Ponzi scheme was discovered no later than December 2017.

16.      The securities sold by Defendant (*i.e.*, the Debtors' Notes and Units) were not
registered with the Securities and Exchange Commission (the "SEC") or applicable state
securities agencies and there was no applicable exemption from registration. Nor was Defendant
registered as a broker-dealer with the SEC or applicable state agencies.

17.      Investors were often told that they were investing money to be loaned with
respect to particular properties owned by third parties, that those properties were worth
substantially more than the loans against the properties, and that they would have the benefit of a
stream of payments from these third parties for high-interest loans, protected by security interests
and/or mortgages against such properties. Shapiro and his lieutenants represented to Investors
that the Debtors' profits would be generated by the difference between the interest rate the
Debtors charged its third-party borrowers and the interest rate it paid Investors.

18.      In reality, these statements were lies. Investors' money was almost never used to
make high-interest loans to unrelated, third-party borrowers, and there was no stream of
payments; instead, Investors' money was commingled and used for an assortment of items,
including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions,
overhead (largely for selling even more Notes and Units to Investors), and payment of principal
and interest to existing Investors. The money that was used to acquire properties (almost always
owned by a disguised affiliate) cannot be traced to any specific Investor. These are typical
characteristics of Ponzi schemes.

19.      Because the Debtors operated as a Ponzi scheme, obtaining new money from
Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each

5

new investment was a net negative. Money was siphoned off to pay the expenses described above, so that the Debtors actually received only a fraction of the investment dollars. New money also perpetuated the Ponzi scheme, as such money enabled the Debtors to return fictitious "profits" to early Investors – an essential component of the scheme, because "repaying" early Investors led to new investments, without which the house of cards would fall, as it eventually did. At the same time, each investment created an obligation to return to the defrauded Investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

*The Proof(s) of Claim*

20. Defendant was scheduled by the Debtors for claims against the Debtors as identified in particular on Exhibit A hereto (collectively the "Claims"). The Claims are based on Notes and/or Units held by and commissions owed to Defendant.

21. Defendant engaged in activities that generated investments in the Debtors. Defendant is or was in the business of selling investment products, including the Debtors' Notes and/or Units, to retail investors. Defendant solicited and sold Notes and/or Units to investors. Defendant received commission payments from the Debtors on account of Notes and/or Units sold to investors

*The Transfers*

22. Plaintiff is informed and believes and thereupon alleges that within the 90 days preceding the relevant transferor's petition date, Defendant received transfers totaling not less than the amount set forth on Exhibit B hereto (the "90 Day Transfers"), including commission payments and other compensation. The precise 90 Day Transfers – including the transferor, its

6

DOCS_DE:226521.1 94811/003

Petition Date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit B.

23.    Plaintiff is informed and believes and thereupon alleges that within the two years preceding the Initial Petition Date, Defendant received transfers totaling not less than the amount set forth on Exhibit B hereto (the "Two Year Transfers"), including commission payments and other compensation. (The Two Year Transfers are inclusive of the 90 Day Transfers, but Plaintiff does not seek to recover the same sum more than once.) The Two Year Transfers – including the transferor, its Petition Date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit B.

24.    Plaintiff is informed and believes and thereupon alleges that within the four years preceding the Initial Petition Date, Defendant received transfers totaling not less than the amount set forth on Exhibit B hereto (the "Four Year Transfers" and, collectively with the 90 Day Transfers and the Two Year Transfers, the "Transfers"), including commission payments and other compensation. (The Four Year Transfers are inclusive of the 90 Day Transfers and the Two Year Transfers, but Plaintiff does not seek to recover the same sum more than once.) The precise Four Year Transfers – including the transferor, its Petition Date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit B.

### FIRST CLAIM FOR RELIEF

### Avoidance and Recovery of Preferential Transfers

25.    Plaintiff realleges and incorporates herein Paragraphs 1 through 24, as if fully set forth herein.

26.    The 90 Day Transfers constituted transfers of the Debtors' property.

27.     The 90 Day Transfers were made to or for the benefit of Defendant on account of an antecedent debt and while the Debtors were insolvent.  The affirmative assertion that the Debtors were insolvent at the times of the 90 Day Transfers is not intended and does not shift the burden of proof or alter the presumption of insolvency provided by Bankruptcy Code section 547(f).

28.     By virtue of the 90 Day Transfers, Defendant received more than it would have received if the 90 Day Transfers had not been made and if Defendant received a distribution pursuant to a chapter 7 liquidation.

29.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 547(b), 550(a), and 551 (a) avoiding the 90 Day Transfers free and clear of any interest of Defendant (b) directing that the 90 Day Transfers be set aside, and (c) recovering the 90 Day Transfers or the value thereof from Defendant for the benefit of the Liquidation Trust.

## SECOND CLAIM FOR RELIEF

## Avoidance and Recovery of Actual Intent Fraudulent Transfers – Bankruptcy Code

30.     Plaintiff realleges and incorporates herein Paragraphs 1 through 29, as if fully set forth herein.

31.     The Two Year Transfers constituted transfers of the Debtors' property.

32.     The Two Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the services allegedly provided in exchange for such transfers perpetuated a Ponzi scheme.

33.     The Two Year Transfers were made to or for the benefit of Defendant.

34.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendant, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendant for the benefit of the Liquidation Trust.

**THIRD CLAIM FOR RELIEF**

**Avoidance and Recovery of Constructive Fraudulent Transfers – Bankruptcy Code**

35.     Plaintiff realleges and incorporates herein Paragraphs 1 through 34, as if fully set forth herein.

36.     The Two Year Transfers constituted transfers of the Debtors' property.

37.     The Two Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that Debtors would incur, debts beyond their ability to pay as such debts matured.

38.     The Two Year Transfers were made to or for the benefit of Defendant.

39.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendant, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendant for the benefit of the Liquidation Trust.

9

## FOURTH CLAIM FOR RELIEF



### Avoidance and Recovery of Actual Intent Voidable Transactions – State Law

40.     Plaintiff realleges and incorporates herein Paragraphs 1 through 39, as if fully set forth herein.

41.     The Four Year Transfers constituted transfers of the Debtors' property.

42.     The Four Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the services allegedly provided in exchange for such transfers perpetuated a Ponzi scheme.

43.     The Four Year Transfers were made to or for the benefit of Defendant.

44.     Each Debtor that made any of the Four Year Transfers had at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

45.     The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(1) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

46.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and clear of any claimed interest of Defendant, (b) directing that the Four Year Transfers be set aside, and (c) recovering such Four Year Transfers or the value thereof from Defendant for the benefit of the Liquidation Trust.

10

## FIFTH CLAIM FOR RELIEF



### Avoidance and Recovery of Constructive Voidable Transactions – State Law

47.     Plaintiff realleges and incorporates herein Paragraphs 1 through 46, as if fully set forth herein.

48.     The Four Year Transfers constituted transfers of the Debtors' property.

49.     The Four Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent, and/or (ii) were engaged or was about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that it would incur, debts beyond their ability to pay as such debts matured.

50.     The Four Year Transfers were made to or for the benefit of Defendant.

51.     At the time of and/or subsequent to each of the Four Year Transfers, each Debtor that made any of the Four Year Transfers had at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

52.     The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(2) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

53.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and clear of any claimed interest of Defendant, (b) directing that the Four Year Transfers be set aside,

11

and (c) recovering such Four Year Transfers or the value thereof from Defendant for the benefit

of the Liquidation Trust.

## SIXTH CLAIM FOR RELIEF

**COPY**

### Objection to Claims (Bankruptcy Code Section 502(d))

54.     Plaintiff realleges and incorporates herein Paragraphs 1 through 53, as if

fully set forth herein.

55.     The Claims are not allowable because:

   a.  Defendant received property, i.e., the Transfers, recoverable under
       Bankruptcy Code section 550; and/or

   b.  Defendant received a transfer, i.e., the Transfers, avoidable under
       Bankruptcy Code section 544, 547, or 548.

56.     In either event, the Claims must be disallowed under Bankruptcy Code

section 502(d) unless and until Defendant has fully repaid the amount, or turned over any such

property, for which Defendant is liable under Bankruptcy Code section 550.

## SEVENTH CLAIM FOR RELIEF

### Equitable Subordination of Claims

57.     Plaintiff realleges and incorporates herein Paragraphs 1 through 56, as if

fully set forth herein.

58.     By providing services that helped perpetuate a Ponzi scheme, Defendant

engaged in inequitable conduct.

59.     Defendant's inequitable conduct has resulted in injury to the Debtors'

estates and their other creditors and/or has conferred an unfair advantage on Defendant.

60.     Principles of equitable subordination require that any claims asserted by

Defendant be equitably subordinated to all other claims against the Debtors.

12

DOCS_DE:226521.1 94811/003

COPY

61. Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

62. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code section 510(c) equitably subordinating any and all claims that Defendant may assert against any of the Debtors, whatever the origin of those claims, including, without limitation, the Claims and any claims that may be asserted under Bankruptcy Code section 502(h), to all other claims against the Debtors.

**EIGHTH CLAIM FOR RELIEF**

**Sale of Unregistered Securities (Securities Act Sections 5(a), 5(c), and 12(a))**

63. Plaintiff realleges and incorporates herein Paragraphs 1 through 62, as if fully set forth herein.

64. The Notes and Units sold by Defendant were securities within the meaning of the Securities Act.

65. No registration statement was filed or in effect with the SEC pursuant to the Securities Act with respect to the securities issued by the Debtors as described in this Complaint and no exemption from registration existed with respect to these securities.

66. From in or about July 2012 through at least December 4, 2017, Defendant directly and indirectly:

a. made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

b. carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or

c. made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

DOCS_DE:226521.1 94811/003

without a registration statement having been filed or being in effect with the SEC as to such securities.

67.    By reason of the foregoing, Defendant violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

68.    The Investors who contributed their claims to the Liquidation Trust purchased the unregistered securities issued by the Debtors and as a direct and proximate result sustained significant damages. Accordingly, the Liquidation Trust has standing under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), to bring a cause of action seeking damages based on Defendant's violations of Section 5(a) and 5(c) of the Securities Act.

69.    As a result of the foregoing, Plaintiff is entitled to judgment holding Defendant liable for the sale of unregistered securities, as set forth in Exhibit C, or in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### Fraud

70.    Plaintiff realleges and incorporates herein Paragraphs 1 through 69, as if fully set forth herein.

71.    Defendant misrepresented the facts to Investors, including by making affirmative misrepresentations and by concealing and failing to disclose the true facts. Among the misrepresentations were that Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties.

14

72.     In reality, these statements were lies. Investors' money was almost never used to
make high-interest loans to unrelated, third-party borrowers, and there was no stream of
payments; instead, Investors' money was commingled and used for an assortment of expenses,
including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions,
overhead (largely for selling even more Notes and Units to Investors), and payment of principal
and interest to existing investors. The money that was used to acquire properties (almost always
owned by a disguised affiliate) cannot be traced to any specific Investor.

73.     Defendant made these misrepresentations knowingly, with scienter, and with
intent to defraud Investors.

74.     The Investors who contributed their claims to the Liquidation Trust justifiably
relied on Defendant's misrepresentations of facts, and as a direct and proximate result sustained
hundreds of millions of dollars in damages.

75.     As a result of the foregoing, Plaintiff is entitled to judgment holding Defendant
liable for fraud, as set forth in Exhibit C, or in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

### Aiding and Abetting Fraud

76.     Plaintiff realleges and incorporates herein Paragraphs 1 through 75, as if fully set
forth herein.

77.     Shapiro – an architect of the fraud – also misrepresented the facts to Investors,
and did so knowingly, with scienter, and with intent to defraud Investors. The Investors who
contributed their claims to the Liquidation Trust justifiably relied on Shapiro's
misrepresentations of facts, and as a direct and proximate result sustained hundreds of millions
of dollars in damages.

15

78.  Defendant knowingly and substantially assisted Shapiro in defrauding investors.

79.  Defendant was aware of Shapiro's fraud and acted knowingly in providing

substantial and material assistance to Shapiro.

80.  Defendant substantially benefited by receiving income, commissions, and

bonuses.

81.  As a result of the foregoing, Plaintiff is entitled to judgment holding Defendant

liable for aiding and abetting fraud, as set forth in Exhibit C, or in an amount to be proven at

trial, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, Plaintiff requests that the Court enter

judgment:

(1)  On the first claim for relief, (a) avoiding the 90 Day Transfers free and
clear of any interest of Defendant, (b) directing that the 90 Day Transfers
be set aside, and (c) ordering Defendant to pay to Plaintiff $52,250.89;

(2)  On the second and third claims for relief, (a) avoiding the Two Year
Transfers free and clear of any claimed interest of Defendant, (b) directing
that the Two Year Transfers be set aside, and (c) ordering Defendant to
pay to Plaintiff $423,826.20;

(3)  On the fourth and fifth claims for relief, (a) avoiding the Four Year
Transfers free and clear of any claimed interest of Defendant, (b) directing
that the Four Year Transfers be set aside, (c) ordering Defendant to pay to
Plaintiff $431,472.62;

(4)  On the sixth claim for relief, sustaining the objection to the Claims,
decreeing that Defendant take nothing therefrom, and directing the Claims
Agent to strike the Schedule F claims from the official Claims Register as
set forth in more detail in Exhibit A;

(5)  On the seventh claim for relief, equitably subordinating any and all claims
that Defendant may assert against any of the Debtors or their estates,
whatever the origin of those claims, including, without limitation, the
Claim and any claims that may be asserted under Bankruptcy Code section
502(h), to all other claims against the Debtors or their estates;

16

(6) On the eighth claim for relief, holding Defendant liable for damages, in the amount of $17,539,876.10 for sale of Notes and/or Units as set forth in Exhibit C, or in an amount to be proven at trial, arising from Defendant's sale of unregistered securities;

(7) On the ninth claim for relief, holding Defendant liable for fraud, for $17,539,876.10 for sale of Notes and/or Units as set forth in Exhibit C in an amount to be proven at trial;

(8) On the tenth claim for relief, holding Defendant liable for aiding and abetting fraud, in the amount of $17,539,876.10 for sale of Notes and/or Units as set forth in Exhibit C, or in an amount to be proven at trial; and

(9) On all claims for relief, awarding Plaintiff prejudgment interest as permitted by law, costs of suit, and such other and further relief as is just and proper.

Dated: November 27, 2019
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Colin R. Robinson
Richard M. Pachulski (CA Bar No. 90073)
Andrew W. Caine (CA Bar No. 110345)
Bradford J. Sandler (DE Bar No. 4142)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-4100
Fax: 302-652-4400
Email: rpachulski@pszjlaw.com
acaine@pszjlaw.com
bsandler@pszjlaw.com
crobinson@pszjlaw.com

*Counsel to Plaintiff, as Liquidating Trustee of the Woodbridge Liquidation Trust*

17

EXHIBIT A

Scheduled and Filed Claims

COPY

| | Scheduled Claims | | | Filed Claims | | |
|---|---|---|---|---|---|---|
| Creditor | Schedule | Amount | C/U/D | Claim No. | Amount | Classification |
| Darin Baker | F | $297,671.83 | C/U/D | | | |
| Totals | | $297,671.83 | | | $0.00 | |

Exhibit B
Commission Payments

| Debtor | Ck. No. | Petition Date | Clear Date | Name | Receipts | Disbursements |
|---|---|---|---|---|---|---|
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 12/01/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 12/01/17 | DARIN BAKER | | 2,496.15 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/24/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/24/17 | DARIN BAKER | | 2,621.15 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/17/17 | DARIN BAKER | | 1,408.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/17/17 | DARIN BAKER | | 2,496.15 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/10/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/10/17 | DARIN BAKER | | 2,496.15 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/03/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/03/17 | DARIN BAKER | | 2,496.15 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/27/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/27/17 | DARIN BAKER | | 2,696.15 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/20/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/20/17 | DARIN BAKER | | 2,496.15 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/13/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/13/17 | DARIN BAKER | | 2,766.15 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/06/17 | DARIN BAKER | | 1,080.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/06/17 | DARIN BAKER | | 2,496.15 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/29/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/29/17 | DARIN BAKER | | 3,441.64 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/22/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/22/17 | DARIN BAKER | | 3,664.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/15/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/15/17 | DARIN BAKER | | 2,582.80 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/08/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/08/17 | DARIN BAKER | | 2,164.05 |
| | | | | | | 52,250.89 |
| | | | | TOTAL 90 DAY | | |
| | | | | NET DISBURSEMENTS - 90 DAY | | 52,250.89 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/01/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/01/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/25/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/25/17 | DARIN BAKER | | 2,814.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/18/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/18/17 | DARIN BAKER | | 2,289.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/11/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/11/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/04/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/04/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/28/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/28/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/21/17 | DARIN BAKER | | 894.37 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/21/17 | DARIN BAKER | | 2,289.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/14/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/14/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/07/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/07/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/30/17 | DARIN BAKER | | 1,350.01 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/30/17 | DARIN BAKER | | 7,349.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/23/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/23/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/16/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/16/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/09/17 | DARIN BAKER | | 1,567.18 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/09/17 | DARIN BAKER | | 2,664.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/02/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/02/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/26/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/26/17 | DARIN BAKER | | 12,464.82 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/19/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/19/17 | DARIN BAKER | | 12,464.82 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/12/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/12/17 | DARIN BAKER | | 12,464.82 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/05/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/05/17 | DARIN BAKER | | 5,379.30 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/28/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/28/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/21/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/21/17 | DARIN BAKER | | 2,164.05 |

COPY

Exhibit 8
Commission Payments

COPY

| Debtor | Ck. No. | Petition Date | Clear Date | Name | Receipts | Disbursements |
|--------|---------|---------------|------------|------|----------|---------------|
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/14/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/14/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/07/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/07/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/31/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/31/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/24/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/24/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/17/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/17/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/10/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/10/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/03/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/03/17 | DARIN BAKER | | 2,789.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/24/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/24/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/17/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/17/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/10/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/10/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/03/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/03/17 | DARIN BAKER | | 2,164.05 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/27/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/27/17 | DARIN BAKER | | 5,396.67 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/20/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/20/17 | DARIN BAKER | | 6,387.20 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/13/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/13/17 | DARIN BAKER | | 4,768.50 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/06/17 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/06/17 | DARIN BAKER | | 9,372.93 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 12/29/16 | DARIN BAKER | | 3,033.33 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 12/23/16 | DARIN BAKER | | 5,120.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 12/16/16 | DARIN BAKER | | 11,545.83 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 12/09/16 | DARIN BAKER | | 7,331.97 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 12/02/16 | DARIN BAKER | | 3,941.67 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/25/16 | DARIN BAKER | | 3,820.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/18/16 | DARIN BAKER | | 12,924.77 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/10/16 | DARIN BAKER | | 23,314.67 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 11/04/16 | DARIN BAKER | | 22,645.42 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/28/16 | DARIN BAKER | | 4,842.27 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/21/16 | DARIN BAKER | | 4,320.23 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/14/16 | DARIN BAKER | | 4,487.22 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 10/07/16 | DARIN BAKER | | 2,909.81 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/30/16 | DARIN BAKER | | 6,275.85 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/23/16 | DARIN BAKER | | 2,345.10 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/16/16 | DARIN BAKER | | 5,092.70 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/09/16 | DARIN BAKER | | 1,850.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 09/02/16 | DARIN BAKER | | 5,669.20 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/26/16 | DARIN BAKER | | 2,270.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/19/16 | DARIN BAKER | | 2,598.75 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/12/16 | DARIN BAKER | | 1,650.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 08/05/16 | DARIN BAKER | | 3,800.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/29/16 | DARIN BAKER | | 2,805.20 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/22/16 | DARIN BAKER | | 4,650.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/15/16 | DARIN BAKER | | 2,435.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/08/16 | DARIN BAKER | | 1,847.50 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 07/01/16 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/24/16 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/17/16 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/10/16 | DARIN BAKER | | 2,200.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 06/03/16 | DARIN BAKER | | 1,600.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/27/16 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/20/16 | DARIN BAKER | | 1,900.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/13/16 | DARIN BAKER | | 1,810.39 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 05/06/16 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/29/16 | DARIN BAKER | | 1,850.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/22/16 | DARIN BAKER | | 1,586.36 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/15/16 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/08/16 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 04/01/16 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/25/16 | DARIN BAKER | | 1,350.00 |

Exhibit B
Commission Payments

| Debtor | Ck. No. | Petition Date | Clear Date | Name | Receipts | Disbursements |
|--------|---------|---------------|------------|------|----------|---------------|
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/18/16 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/11/16 | DARIN BAKER | | 1,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 03/04/16 | DARIN BAKER | | 2,350.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/26/16 | DARIN BAKER | | 750.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/19/16 | DARIN BAKER | | 750.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/12/16 | DARIN BAKER | | 750.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 02/05/16 | DARIN BAKER | | 750.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/29/16 | DARIN BAKER | | 750.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/22/16 | DARIN BAKER | | 750.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/15/16 | DARIN BAKER | | 716.42 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | PAYROLL | 12/04/17 | 01/08/16 | DARIN BAKER | | 716.42 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 12/31/15 | DARIN BAKER | | 716.42 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 12/25/15 | DARIN BAKER | | 716.42 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 12/18/15 | DARIN BAKER | | 716.42 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 12/11/15 | DARIN BAKER | | 716.42 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 12/11/15 | DARIN BAKER | | 120.00 |
| | | | | TOTALS - 2 YEAR (INCL. 90 DAY) | - | 423,826.20 |
| | | | | NET DISBURSEMENTS - 2 YEAR (INCL. 90 DAY) | | 423,826.20 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 12/04/15 | DARIN BAKER | | 716.42 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 11/27/15 | DARIN BAKER | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 11/20/15 | DARIN BAKER | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 11/20/15 | DARIN BAKER | | 180.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 11/13/15 | DARIN BAKER | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 11/06/15 | DARIN BAKER | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 10/30/15 | DARIN BAKER | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 10/23/15 | DARIN BAKER | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 10/16/15 | DARIN BAKER | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 10/09/15 | DARIN BAKER | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | DD | 12/04/17 | 10/02/15 | DARIN BAKER | | 750.00 |
| | | | | TOTALS - 4 YEAR (INCL. 2 YEAR AND 90 DAY) | $   - | $   431,472.62 |
| | | | | NET DISBURSEMENTS - 4 YEAR (INCL. 2 YEAR AND 90 DAY) | | $   431,472.62 |

COPY

Schedule of Claims Contributed by Investors

Broker(s): Darin Baker

| | Outstanding Investor Principal Amounts | | Net/Allowed Claim Amounts | |
| Investor Name | Class 3 | Class 5 | Class 3 | Class 5 |
|---|---|---|---|---|
| ALAN H HERRICK | $ 50,000.00 | $ - | $ 45,408.33 | $ - |
| ALBERT S & JEAN L FRALEIGH 2011 DEC OF TR | 100,000.00 | - | 94,973.64 | - |
| AMY B SAYNE | 60,000.00 | - | 59,588.89 | - |
| ANN HARDIN FORD RT | 650,000.00 | - | 635,916.67 | - |
| BARBARA ANN ASHMORE | 70,000.00 | - | 64,485.55 | - |
| BARBARA E & VINCENT J PUCCI | 25,000.00 | - | 23,210.80 | - |
| BENJAMIN G & SHELLEY A HENKEL | 125,000.00 | - | 118,359.37 | - |
| BESSIE LOUISE TURNER | 95,000.00 | - | 94,556.67 | - |
| BRAD A THOMPSON | 30,000.00 | - | 29,495.83 | - |
| CARLOS LAFFITE | | 100,000.00 | - | 92,755.62 |
| CAROL A LAMBERT & ANDREA F DARWENT | 100,000.00 | - | 97,239.60 | - |
| CHARLES A CHANDLEY | 100,000.00 | - | 98,150.00 | - |
| CHARLES L & DOROTHY A WARNER RLT | 400,000.00 | - | 394,359.73 | - |
| CLAUDIA SYKES | 50,000.00 | - | 46,458.33 | - |
| CURTIS E & ELIZABETH A HOLBERT | 200,000.00 | - | 196,249.99 | - |
| DEARMOND REVOCABLE LIVING TRUST DTD 06/04/04 | 50,000.00 | - | 48,540.61 | - |
| DEBRA M ZAMPETTI | 100,000.00 | - | 95,702.75 | - |
| DOLLY KELEPECZ | 75,000.00 | - | 73,570.83 | - |
| DONALD H & KATHLEEN WEAVER | 100,000.00 | - | 94,133.33 | - |
| DONALD N & SANDRA L WRIGHT | 90,000.00 | - | 86,052.10 | - |
| DORIS DEANNA DAVIS RLT DTD 07/19/02 | 100,000.00 | - | 97,616.67 | - |
| EDINA ALLEN | 224,999.00 | - | 216,597.66 | - |
| EDWARD J SMITH & DONNA P FALCIANO | 100,000.00 | - | 94,438.86 | - |
| ELAINE G KLOTZ | 70,000.00 | - | 64,692.10 | - |
| GABRIEL CHRISTIAN | 25,000.00 | - | 24,593.74 | - |
| GARY J & MARY B TENPAS | 60,000.00 | - | 56,810.00 | - |
| GERALD & CARMELLA C SALVUCCI TR | 150,000.00 | - | 133,483.85 | - |
| GLENN S CAMP | 50,000.00 | - | 40,942.75 | - |
| HARRIS & MARION FREEMAN | 100,000.00 | - | 97,833.33 | - |
| HARVEY DICKSON | 25,000.00 | - | 24,690.97 | - |
| HELMUT W & RENATA BUSSE | 100,000.00 | - | 99,350.00 | - |
| IRA SVCS TR CO-CFBO CHARLOTTE WOOLARD INH | 550,875.00 | - | 534,433.83 | - |
| IRA SVCS TR CO-CFBO KATHLEEN P HOWDEN | 48,600.00 | - | 41,135.50 | - |
| IRA SVCS TR CO-CFBO KENNETH R HOWDEN IRA | 60,200.00 | - | 50,601.83 | - |
| IRA SVCS TR CO-CFBO MARILYN DUHAMEL ROTH | 63,000.00 | - | 59,303.12 | - |
| IRA SVCS TR CO-CFBO RODNEY K HOWDEN | 302,500.00 | - | 275,421.97 | - |
| IRIS LETNER | 60,000.00 | - | 58,947.92 | - |
| JACK L & ROSE ANN KILE | 225,000.00 | - | 222,150.00 | - |
| JAMES A MCDONALD | 225,000.00 | - | 210,279.80 | - |
| JAMES R RICE | 150,000.00 | - | 137,825.00 | - |
| JANIS R POWERS | 50,000.00 | - | 50,000.00 | - |
| JEAN ANN BETTERLEY | 100,000.00 | - | 82,655.08 | - |
| JEAN M EICHOLTZ | 120,000.00 | - | 118,900.00 | - |
| JOAN E SHERIDAN | 225,000.00 | 100,000.00 | 174,477.99 | 77,545.78 |
| JOHN & ALICIA OHLSSON | 75,000.00 | - | 73,169.48 | - |
| JOHN E & LYNN W HODGE | 349,330.00 | - | 326,036.24 | - |
| JOHN E MAY | 100,000.00 | - | 85,800.00 | - |
| JOHN E SIEGLER JR | 100,000.00 | - | 95,969.52 | - |

Schedule of Claims Contributed by Investors

Broker(s): Darin Baker

| Investor Name | Outstanding Investor Principal Amounts | | Net/Allowed Claim Amounts | |
|---|---|---|---|---|
| | Class 3 | Class 5 | Class 3 | Class 5 |
| JULIE VANDENBOS RT UA 06/19/08 | 100,000.00 | - | 91,999.96 | - |
| JUNE D LINDSEY | 1,000,000.00 | - | 922,500.00 | - |
| KAREN S CLIFTON | 50,000.00 | - | 49,816.67 | - |
| KENNETH & EMMA SATTLER | 100,000.00 | - | 96,683.33 | - |
| KIRSTEN HOYER | - | 100,000.00 | - | 86,861.16 |
| KURT BATTERMAN | 100,000.00 | - | 99,338.88 | - |
| LARRY & BARBARA SMITH | 80,000.00 | - | 78,988.90 | - |
| LAURA STERN & LARA POSNER-LEMONS | 50,000.00 | - | 49,941.67 | - |
| LEANNE WRIGHT | 50,000.00 | - | 48,405.54 | - |
| LEILA S & JEFFREY A PEPPERS | 25,000.00 | - | 24,262.20 | - |
| LELAND WOLFORD | 100,000.00 | - | 96,377.76 | - |
| LINDA NAY | 25,000.00 | - | 24,461.79 | - |
| LINDA V & TIMOTHY NORDMAN | 100,000.00 | - | 96,683.33 | - |
| LOUIS & GERALDINE HUNTEMAN | 30,000.00 | - | 29,650.00 | - |
| LYNDA BEAULIEU | 33,000.00 | - | 30,272.00 | - |
| MAINSTAR-FBO BRAD A THOMPSON | - | 100,000.00 | - | 98,750.00 |
| MAINSTAR-FBO JOHN GEDDES | - | 75,000.00 | - | 66,591.69 |
| MAINSTAR-FBO RICHARD CANTERO | - | 100,000.00 | - | 90,025.04 |
| MAINSTAR-FBO SHERRIE SCHIFF | - | 200,000.00 | - | 179,033.29 |
| MELANIE S VANDENBOS 2004 RT | 200,000.00 | 250,000.00 | 160,483.53 | 200,604.41 |
| MELISSA J MEYERS | 25,000.00 | - | 23,696.17 | - |
| MEYERS FAMILY TRUST | 40,000.00 | - | 39,993.33 | - |
| NANCY J BARRETT | 100,000.00 | - | 98,150.00 | - |
| NANCY M CASE TR DTD 04/11/17 | 80,000.00 | - | 70,801.99 | - |
| PATTI C ARMSTRONG & RICHARD B ARMSTRONG JR | 100,000.00 | - | 99,350.00 | - |
| PEDRO & DAISY TREJO | 100,000.00 | - | 98,036.12 | - |
| PROVIDENT TRUST GROUP LLC-FBO ALLISON KAHLE IR/ | 33,209.00 | - | 31,061.48 | - |
| PROV. TR GP-FBO CHARLES LINDSELL IRA | 98,467.00 | - | 89,853.55 | - |
| PROV. TR GP-FBO DONALD R GUIDRY IRA | 25,343.00 | - | 24,769.08 | - |
| PROV. TR GP-FBO GEORGE NUFFER IRA | 177,000.00 | - | 152,858.92 | - |
| PROV. TR GP-FBO JACQUELINE M BODELIN IRA | 108,440.00 | - | 106,379.64 | - |
| PROV. TR GP-FBO JOHN SIEGLER JR IRA | 65,500.00 | - | 63,612.30 | - |
| PROV. TR GP-FBO KAREN T GUIDRY IRA | 25,343.00 | - | 24,769.08 | - |
| PROV. TR GP-FBO KAYE FIERLE IRA | 60,000.00 | - | 59,685.00 | - |
| PROV. TR GP-FBO LINDA V NORDMAN IRA | 139,000.00 | - | 134,413.00 | - |
| PROV. TR GP-FBO LOIS M CARLI ROTH IRA | 70,000.00 | - | 62,766.32 | - |
| PROV. TR GP-FBO MILDRED E OHLER IRA | 53,177.00 | - | 49,717.48 | - |
| PROV. TR GP-FBO PAMELA F LAWRENCE IRA | 33,054.00 | - | 32,571.96 | - |
| PROV. TR GP-FBO PAUL E ASHMORE IRA | 200,000.00 | - | 177,433.33 | - |
| PROV. TR GP-FBO PAUL LAWRENCE IRA | 48,000.00 | - | 47,038.67 | - |
| PROV. TR GP-FBO RAYMOND M SYKES IRA | 54,081.00 | - | 39,102.39 | - |
| PROV. TR GP-FBO RICHARD J CARLI IRA | 430,000.00 | - | 413,845.84 | - |
| PROV. TR GP-FBO SEYMOUR SCHWARTZ IRA | 139,011.33 | - | 132,975.04 | - |
| PROV. TR GP-FBO SUSAN DEARMOND IRA | 124,270.00 | - | 117,459.45 | - |
| PROV. TR GP-FBO SUSAN N SHAW ROTH IRA | 74,750.00 | - | 70,343.47 | - |
| PROV. TR GP-FBO SUSAN W CAMP IRA | 70,000.00 | - | 67,226.25 | - |
| PROV. TR GP-FBO THOMAS H FRAZER IRA | 27,077.00 | - | 26,005.76 | - |
| PROV. TR GP-FBO VIRGINIA A NUFFER IRA | 73,000.00 | - | 62,993.28 | - |

COPY

Schedule of Claims Contributed by Investors

Broker(s): Darin Baker

| Investor Name | Outstanding Investor Principal Amounts | | Net/Allowed Claim Amounts | |
|---|---|---|---|---|
| | Class 3 | Class 5 | Class 3 | Class 5 |
| PROV. TR GP-FBO VIVIAN F SHAW IRA | 224,050.00 | - | 219,979.76 | - |
| RANDALL M CAMP | 50,000.00 | - | 42,213.89 | - |
| RAYMOND J CAWLEY LT UAD 05/13/09 | 100,000.00 | - | 100,000.00 | - |
| REBECCA E GRITTON & DEBORAH M FERRIN | 25,000.00 | - | 24,295.12 | - |
| RICHARD & BEVERLY CROWE | 65,000.00 | - | 62,573.33 | - |
| RICHARD & MELISSA MICHNA | 50,000.00 | - | 50,000.00 | - |
| RICHARD A CALDWELL | 167,000.00 | - | 166,471.17 | - |
| RICHARD H MINETTI RT DTD 06/02/97 | 141,000.00 | - | 114,213.92 | - |
| RICHARD S STEFFEN | 35,000.00 | - | 34,577.09 | - |
| ROBERT E & JACQUELINE M BODELIN | 50,000.00 | - | 49,041.67 | - |
| ROBERT W & JOYCE E SCHEUERMAN | 25,000.00 | - | 25,000.00 | - |
| REVOCABLE TRUST AGREEMENT FOR EDGAR C TAYLOR | 400,000.00 | - | 391,986.09 | - |
| RUSSELL A SMITH | 250,000.00 | - | 247,083.33 | - |
| RUSSELL C TAYLOR | 50,000.00 | - | 48,166.64 | - |
| SALLIE R RICE | 700,000.00 | - | 646,266.66 | - |
| SAUNDRA SUE JONES | 50,000.00 | - | 44,387.53 | - |
| SHERMAN BLENCH TR | 30,000.00 | - | 27,980.00 | - |
| SUNWEST TR CRAIG L KLOSTERMAN IRA | 165,000.00 | - | 164,120.00 | - |
| SUNWEST TR DANIEL J COWSER IRA | 80,000.00 | - | 80,000.00 | - |
| SUNWEST TRUST CFBO DONALD HENDRIX IRA | 200,000.00 | - | 162,766.67 | - |
| SUNWEST TR DORIS B MATTHEWS IRA | 100,000.00 | - | 83,983.33 | - |
| SUNWEST TR EARL WOODROW BELL JR IRA | 200,000.00 | - | 192,383.33 | - |
| SUNWEST TR JAMES A MCDONALD ROTH IRA | 550,000.00 | - | 456,559.69 | - |
| SUNWEST TR NEIL T COWLEY IRA | 329,000.00 | - | 309,472.02 | - |
| SUNWEST TR RALPH D FISHER IRA | 100,000.00 | - | 98,400.00 | - |
| SUNWEST TR RUTH T VAUGHT IRA | 200,000.00 | - | 195,733.33 | - |
| SUNWEST TR SUSAN A REED IRA | 100,000.00 | - | 97,650.00 | - |
| SUZANNE W SCOTT | 100,000.00 | - | 82,568.96 | - |
| TERESA JONES | 100,000.00 | - | 96,152.84 | - |
| THADDEUS A TERRY | 25,000.00 | - | 24,354.53 | - |
| THE JACQUELINE M CARLSON 2006 TRUST | 25,000.00 | - | 23,358.33 | - |
| THE JAMES A MCDONALD RLT RST 08/01/10 | 150,000.00 | - | 121,329.17 | - |
| THE JEVREMOV FT DTD 11/06/99 | 25,000.00 | - | 23,508.34 | - |
| THE JUDITH A CAWLEY LT DTD 05/13/09 | 200,000.00 | - | 196,391.67 | - |
| THE ROBERT G & KAYE L FIERLE RLT | 50,000.00 | - | 49,017.21 | - |
| THE VIVIAN F SHAW RT DTD 07/23/09 | 100,000.00 | - | 93,683.33 | - |
| THOMAS H FRAZER RT DTD 08/20/09 | 120,000.00 | - | 112,980.00 | - |
| THOMAS K VAUGHAN SR | 70,000.00 | - | 68,343.33 | - |
| THOMAS W MCLEMORE JR | 225,000.00 | - | 211,423.98 | - |
| VICTOR S JARAMILLO | 100,000.00 | - | 87,395.83 | - |
| VICTORIA L HANSEN | 25,000.00 | - | 24,524.29 | - |
| WALTER B LINCOLN | 25,000.00 | - | 23,682.33 | - |
| WAMPLER LIVING TRUST | 100,000.00 | - | 86,500.13 | - |
| WILLIAM E LINDSEY | 1,000,000.00 | - | 860,000.00 | - |
| WILLIAM JR & JOYCE L PEASE | 25,000.00 | - | 20,194.47 | - |
| WILLIAM M & PATRICIA A AMARO RT | - | 50,000.00 | - | 45,611.08 |
| Totals | $ 17,816,276.33 | $ 1,075,000.00 | $ 16,602,098.00 | $ 937,778.07 |

# COMMON LAW COPYRIGHT NOTICE

COPY

Common Law Copyright Notice:  All rights reserved re; common-law copyright of trade-name/trademark, DARIN DUANE BAKER©, as well as any and all derivatives and variations in the spelling of said trade-name/trademarks – Copyright 04/10/1991, by Darin-Duane: Baker-El.  Said trade-name/trademarks, DARIN DUANE BAKER©, may neither be used, nor reproduced, neither in whole, nor in part, nor in any manner whatsoever, without the prior, express, written consent and acknowledgment of Darin-Duane: Baker-El as signified by the blue-ink signature of Darin-Duane: Baker-El, herein after 'Secured Party.' With the intent of being contractually bound, any Juristic Person, as well as the agent of said Juristic Person, consents and agrees by this Copyright Notice that neither said Juristic Person, nor the agent of said Juristic Person, shall display, nor otherwise use in any manner, the trade-name/trademark, nor common-law copyright described herein, nor any derivative of, nor any variation in the spelling of, said name without prior, express, written consent and acknowledgment of Secured Party, as signified by Secured Party's signature in blue ink.  Secured Party neither grants, nor implies, nor otherwise gives consent for any unauthorized use of DARIN DUANE BAKER, and all such unauthorized use is strictly prohibited.  Secured Party is an accommodation party, not a surety, for the purported debtor, i.e. DARIN DUANE BAKER©, and for any derivative of, and for any variation in the spelling of, said name, and for any other juristic person, and is so-indemnified and held harmless by Debtor, i.e. DARIN DUANE BAKER©, IN Hold-harmless and Indemnity Agreement No. HHIH-453516 dated 01/31/2022 against any and all claims, legal actions, orders, warrants, judgments, demands, liabilities, losses, depositions, summonses, lawsuits, costs, fines, liens, levies, penalties, damages, interests, and expenses whatsoever, both absolute and contingent, as are due and as might become due, now existing and as might hereafter arise, and as might be suffered by, imposed on, and incurred by Debtor for any and every reason, purpose, and cause whatsoever.  Self-executing Contract/Security Agreement in Event of Unauthorized Use: By this Copyright Notice, both the Juristic Person and the agent of said Juristic Person, hereinafter jointly and severally "User," consent and agree that any use of DARIN DUANE BAKER©", other than authorized use as set forth above; constitutes unauthorized use of Secured Party's copyrighted property and contractually binds User.  This Notice by Declaration becomes a Security Agreement wherein User is a debtor and 'Darin-Duane: Baker-El' is Secured Party, and signifies that User: (1) grants Secured Party a security interest in all of User's property and interest in property in the sum certain amount of $500,000.00 per each trade-name/trademark used, per each occurrence of use (violation/infringement), plus triple damages, plus costs for each such use, as well as for each and every use of any and all derivatives of, and variations in the spelling of, DARIN DUANE BAKER©,"; (2) authenticates this Security Agreement wherein User is debtor and Darin-Duane: Baker-El is Secured Party, and wherein User pledges all of User's property, i.e. all consumer goods, farm products, inventory, equipment, money, investment property, commercial tort claims, letters of credit, letter-of-credit rights, chattel paper, instruments, deposit accounts, accounts,

documents, and general intangibles, and all User's interest in all such foregoing property, now owned and hereafter acquired, now existing and hereafter arising, and wherever located, as collateral for securing User's contractual obligation in favor of Secured Party for User's unauthorized use of Secured Party's copyrighted property; (3) consents and agrees with Secured Party's filing of a UCC Financing Statement wherein User is debtor and Darin-Duane: Baker-El is Secured Party; (4) consents and agrees that said UCC Financing Statement described above in paragraph "(3)" is a continuing financing statement, and further consents and agrees with Secured Party's filing of any continuation statement necessary for maintaining Secured Party's perfected security interest in all of User's property and interest in property pledged as collateral in Security Agreement described above in paragraph "(2)," until User's contractual obligation theretofore incurred has been fully satisfied; (5) authorizes Secured Party's filing of any UCC Financing Statement, as described above in paragraph "(3)," as well as in paragraph "(4)," and the filing of any Security Agreement, as described above in paragraph "(2)," in the UCC filing office; (6) consents and agrees that any and all such filings described in paragraph "(4)" and "(5)" above are not, and may not be considered, bogus, and that User will not claim that any such filing is bogus; (7) waives all defenses; and (8) appoints Secured Party as Authorized Representative for User, effective upon User's default re User's contractual obligations in favor of Secured Party as set forth below under "Payment Terms" and "Default Terms," with full authorization and power granted Secured Party for engaging in any and all actions on behalf of User including, but not limited by, authentication of a record on behalf of User, as Secured Party, in Secured Party's sole discretion, deems appropriate, and User further consents and agrees that this appointment of Secured Party as Authorized Representative for User, effective upon User's default, is irrevocable and coupled with a security interest. <u>User further consents and agrees with all of the following additional terms of Self-executing Contract/Security Agreement in Event of Unauthorized Use.</u>

**Payment Terms**: In accordance with fees for unauthorized use of DARIN DUANE BAKER©," AS SET FORTH ABOVE, User hereby consents and agrees that User shall pay Secured Party all unauthorized-use fees in full within ten (10) days of date Secured Party's invoice, hereinafter" Invoice," itemizing said fees, is sent and received.

**Default Terms**: In event of non-payment in full of all unauthorized-use fees by User within ten (10) days of date Invoice is sent, User shall be deemed in default and (a) all of User's property and interest in property pledged as collateral by User, as set forth above in paragraph "(2)," immediately becomes property of Secured Party; (b) Secured Party is appointed User's Authorized Representative as set forth above in paragraph "(1)" and "(2)." User consents and agrees that Secured Party may take possession of, as well as otherwise dispose of in any manner that Secured Party, in Secured Party's sole discretion, deems appropriate, including, but not limited by, sale at auction, at any time following User's default, and without further notice, any and all of User's former property and interest in property formerly pledged as collateral by User, now property of Secured Party, in respect of this "Self-executing Contract/Security Agreement in Event of

Form C.L.C. # CLC- 453516 Secured Party; Darin-Duane: Baker-El
For the Common Law Copyright 2022 by the Darin-Duane: Baker-El
Page 2

Unauthorized Use," that Secured Party, again in Secured Party's sole discretion, deems appropriate.

**Terms for Curing Default**: Upon event of default, as set forth above under "Default Terms," irrespective of any and all of User's former property and interest in property in the possession of, as well as disposed of by, Secured Party, as authorized above under "Default Terms," User may cure User's default re only the remainder of User's former property and interest formerly pledged as collateral that is neither in the possession of, nor otherwise disposed of by, Secured Party within twenty (20) days of date of User's default only by payment in full.

**Terms of Strict Foreclosure**: User's non-payment in full of all unauthorized-use fees itemized in Invoice within said twenty (20) day period for curing default as set forth above under "Terms for Curing Default" authorizes Secured Party's immediate non-judicial strict foreclosure on any and all remaining property and interest in property formerly pledged as collateral by User, now property of Secured Party, which is not in the possession of, nor otherwise disposed of by, Secured Party upon expiration of said twenty (20) day strict-foreclosure period. Ownership subject to common-law copyright and UCC Financing Statement and Security Agreement filed with the UCC filing office. Record Owner: Darin-Duane: Baker-El, Autograph Common Law Copyright 04/10/1991.

Record owner: Secured Party/creditor name autographed common-law copyright:

Copyrighted Date: 04/10/1991

Without Prejudice/Without Recourse

Darin-Duane: Baker-El-Secured Party

## ACKNOWLEDGEMENT

County of Los Angeles)
                     ) Scilicet
California State     )

SUBSCRIBED TO AND SWORN before me this 12 day of FEBRUARY, A.D. 2022, a Notary, that Darin-Duane: Baker-El, personally appeared and known to me to be the man whose name subscribed to the within instrument and acknowledged to be the same.

_____ Seal;
Notary Public
My Commission expires _June 16, 2025_

JOHNNY A. VILLALOBOS
Notary Public - California
Los Angeles County
Commission # 2358513
My Comm. Expires Jun 16, 2025

CA Acknowledgment Attached

Form C.L.C. # CLC- 453516  Secured Party; Darin-Duane: Baker-El
For the Common Law Copyright 2022 by the Darin-Duane: Baker-El
Page 3

COPY

**CALIFORNIA ACKNOWLEDGMENT**                                        CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

On February 12, 2022 before me, _____ Johnny A. Villalobos, Notary Public _____,
　　　　　　*Date*　　　　　　　　　　　　　*Here Insert Name and Title of the Officer*

personally appeared Darin - Duane: Baker - El
　　　　　　　　　　　　　　　*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

```
JOHNNY A. VILLALOBOS
Notary Public · California
Los Angeles County
Commission # 2358513
My Comm. Expires Jun 16, 2025
```

*Place Notary Seal and/or Stamp Above*

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　　　*Signature of Notary Public*

———————————— **OPTIONAL** ————————————

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Common Law Copyright Notice _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____             Signer's Name: _____
□ Corporate Officer – Title(s): _____   □ Corporate Officer – Title(s): _____
□ Partner – □ Limited □ General            □ Partner – □ Limited □ General
□ Individual          □ Attorney in Fact     □ Individual          □ Attorney in Fact
□ Trustee             □ Guardian or Conservator  □ Trustee             □ Guardian or Conservator
□ Other: _____                   □ Other: _____
Signer is Representing: _____         Signer is Representing: _____

©2019 National Notary Association

# SECURITY AGREEMENT
NON-NEGOTIABLE





This security agreement is made and entered into this 02/02/2020 by and between DARIN DUANE BAKER, hereinafter "DEBTOR," SOCIAL SECURITY ACCOUNT NUMBER▋▋▋▋ and Darin-Duane: Baker-El, hereinafter "Secured Party." If any part or portion of this Security Agreement is found to be invalid or unenforceable, such part or portion shall not void any other part or portion as reasonably distinguishable from said part(s) or portion(s). The Parties, hereinafter "Parties," are identified as follows:

DEBTOR:

    DARIN DUANE BAKER
    P. O. Box 4804
    VALLEY VILLAGE, CALIFORNIA (STATE) [91607]

SECURED PARTY:

    Darin-Duane: Baker-El
    C/O 12020 Magnolia Boulevard
    VALLEY VILLAGE, CALIFORNIA (STATE) [91607]
    United States of America

NOW, THEREFORE, the Parties agree as follows:

In consideration for the Secured Party providing certain accommodations to DEBTOR, inter alia, to the Secured Party:

1. Constituting the source, origin, and being, i.e. basis of "pre-existing claim," from which the existence of DEBTOR was derived and on the basis of which DEBTOR is able to function as a transmitting utility to conduct Commercial Activity as a conduit for the transmission of goods and services to the Secured Party, and to interact, contract, and exchange goods, services, obligations, and liabilities with other DEBTORS, corporations, and artificial persons in Commerce;

2. Signing by accommodation for DEBTOR in all cases whatsoever wherein any signature of DEBTOR is required;

3. Issuing a binding commitment to extend credit or for the extension of immediately available credit, whether or not drawn upon and whether or not a chargeback is provided for in the event of difficulties in collection;

4. Providing the security for payment of all sums due or owing, or to become due or owing, by DEBTOR; and

Form S.A. # 452016                                         Secured I

5. Constituting the source of the assets, via the sentient existence, exercise of facilities, and labor of the Secured Party, that provide the valuable consideration sufficient to support any contract which DEBTOR may execute or to which DEBTOR may be regarded as bound by any person whatsoever, DEBTOR hereby confirms that this security agreement is a duly executed, signed, and sealed private contract entered into knowingly, intentionally, and voluntarily by DEBTOR and Secured Party, wherein and whereby DEBTOR:

   a. Voluntarily enters DEBTOR in the Commercial Registry;

   b. Transfers and assigns to the Secured Party a security interest in the Collateral described herein below; and

   c. Agrees to be, act, and function in law and commerce, as the unincorporated, proprietary trademark of the Secured Party for exclusive and discretionary use by the Secured Party in any manner that the Secured Party, by Sovereign and Unalienable Right, elects.

# PUBLIC LAWFUL NOTICE

Filing of this Security Agreement by the Parties constitutes open, lawful, public notice that:

1. The law, venue, and jurisdiction of this Security Agreement is the ratified, finalized, signed and sealed private contract freely entered into by and between DEBTOR and the Secured Party as registered herewith.

2. This Security Agreement is contractually complete herein and herewith and cannot be abrogated, altered, or amended, in whole or part, without the express, written consent of both DEBTOR and the Secured Party.

3. DEBTOR is the transmitting utility, and unincorporated, proprietary trademark of the Secured Party, and all property of DEBTOR is the secured property of the Secured Party.

4. Any unauthorized use of DEBTOR in any manner that might influence, affect, pertain to, or be presumed to pertain to the Secured Party in any manner is expressly prohibited without the written consent of the Secured Party.

y; Darin-Duane: ɒɒଽɒ#453516          Secured Party; Darin-Duane: Baker, El.          Secured
                          Security Agreement 2022 by the Darin-Duane: Baker Security Agreement 2022 by
                                              Page 2/12

# FIDELITY BOND

Know all men by these presents, that DEBTOR, DARIN DUANE BAKER, establishes this bond in favor of the Secured Party, Darin-Duane: Baker-El, in the sum of present Collateral Values up to the penal sum of Two Hundred Fifty Billion United States Dollars ($250,000,000,000.00), for the payment of which bond, well and truly made, DEBTOR binds DEBTOR and DEBTOR's heirs, executors, administrators, and third-party assigns, jointly and severally, by these presents.

The condition of the above bond is: The Secured Party covenants to do certain things on behalf of DEBTOR, as set forth above in agreement, and DEBTOR, with regard to conveying goods and services in Commercial Activity to the Secured Party, covenants to serve as a transmitting utility therefore and, as assurance of fidelity, grants to the Secured Party a Security Interest in the herein below described Collateral.

This bond shall be in force and effect as of the date hereon and until the DEBTOR's Surety, DARIN DUANE BAKER, is released from the liability by the written order of the UNITED STATES GOVERNMENT and provided that said Surety may cancel this bond and be relieved of further liability hereunder by delivering thirty (30) day written notice to DEBTOR. No such cancellation shall affect any liability incurred or accrued hereunder prior to the termination of said thirty (30) day period. In such event of notice of cancellation, DEBTOR agrees to reissue the bond before the end of said thirty (30) day period for an amount equal to or greater than the above stated value of this Security Agreement, unless the parties agree otherwise

# INDEMNITY CLAUSE

DEBTOR, without the benefit of discussion or division, does hereby agree, covenant and undertake to indemnify, defend and hold the Secured Party harmless from and against any and all claims, losses, liabilities, costs, interest and expenses hereinafter referred to as "Claims" or "Claim," which claims include, without restriction, all legal costs, interests, penalties and fines suffered or incurred by the Secured Party, in accordance with the Secured Party's personal guarantee with respect to any loan or indebtedness of DEBTOR, including any amount DEBTOR might be deemed to owe to any creditor for any reason whatsoever.

The Secured Party shall promptly advise DEBTOR of any Claim and provide DEBTOR with full details of said Claim, inter alia, copy of any document, correspondence, suit or action received by or served upon the Secured Party. The Secured Party shall fully cooperate with the DEBTOR in any discussion, negotiation or other proceeding related to any Claim.

# OBLIGATIONS SECURED



The security interest granted herein secures any and all indebtedness and liability whatsoever of DEBTOR to the Secured Party, whether direct or indirect, absolute or contingent, due or to become due, now existing of hereafter arising, and however evidenced.

# COLLATERAL

The collateral to which this Security Agreement pertains to, inter alia, all herein below described personal and real property of DEBTOR, now owned or hereafter, acquired by DEBTOR, in which the Secured Party holds all interest.  DEBTOR retains possession and use, and rights of possession and use, of all collateral, and all proceeds, products, accounts and fixtures, and the Orders there from, are released to DEBTOR.

Before any of the below itemized property can be disbursed, exchanged, sold, tendered, forfeited, gifted, transferred, surrendered, conveyed, destroyed, disposed of, or otherwise removed from DEBTOR's possession, Dishonor Settlement Agreement Bill of Exchange #RE423712835US held by the Secured Party must be satisfied in full and acknowledgment of same completed.

1. All proceeds, products, accounts and fixtures from crops, mine head, well head, with transmitting utilities, etc.;

2. All rents, wages and income;

3. All land, mineral, water and air rights;

4. All cottages, cabins, houses and buildings;

5. All bank accounts, bank "safety" deposit boxes and the contents therein, credit card accounts, mutual fund accounts, certificate of deposit accounts, checking accounts, savings accounts, retirement plan accounts, stocks, bonds, securities and benefits from trusts;

6. All inventory in any source;

7. All machinery, either farm or industrial;

8. All boats, yachts and watercraft, and all equipment, accoutrements, baggage and cargo affixed or pertaining thereto or stowed therein, inter alia,: all motors, engines, ancillary equipment, accessories, parts, tools, instruments, electronic equipment, navigation aids, service equipment, lubricants, fuels and fuel additives;

y, Darin. Form S.A.#453516        Secured Party; Darin-Duane: Baker-El
Darin-Duane the Security Agreement 2022 by the Darin-Duane: Baker-El        ...ent 2022 by
Page 4/12

9. All aircraft, gliders, balloons, and all equipment, accoutrements, baggage, and cargo affixed or pertaining thereto or stowed therein, inter alia: all motors, engines, ancillary equipment, accessories, parts, tools, instruments, electronic equipment, navigation aids, service equipment, lubricants, fuels and fuel additives;

10. All motor homes, trailers, mobile homes, recreational vehicles, house cargo, and travel trailers, and all equipment, accoutrements, baggage, and cargo affixed or pertaining thereto or stowed therein, inter alia: all ancillary equipment, accessories, parts, service equipment, lubricants, fuels and fuel additives;

11. All livestock and animals, and all things required for the care, feeding, use, and husbandry thereof;

12. All vehicles, autos, trucks, four-wheel vehicles, trailers, wagons, motorcycles, bicycles, tricycles, wheeled conveyances;

13. All computers, computer-related equipment and accessories, electronically stored files or data, telephones, electronic equipment, office equipment and machines;

14. All visual reproduction systems, aural reproduction systems, motion pictures, films, video tapes, audio tapes, sound tracks, compact discs, phonograph records, film, video and aural production equipment, cameras, projectors and musical instruments;

15. All manuscripts, booklets, pamphlets, treatises, treatments, monographs, stories, written material, libraries, plays, screenplays, lyrics, songs and music;

16. All books and records of DEBTOR;

17. All Trademarks, Registered Marks, copyrights, patents, proprietary data and technology, inventions, royalties and good will;

18. All scholastic degrees, diplomas, honors, awards, meritorious citations;

19. All records, diaries, journals, photographs, negatives, transparencies, images, video footage, film footage, drawings, sound records, audio tapes, video tapes, computer production or storage of all kinds whatsoever, of DEBTOR;

20. All fingerprints, footprints, palm prints, thumb prints, RNA materials, DNA materials, blood and blood fractions, biopsies, surgically removed tissue, bodily parts, organs, hair, teeth, nails, semen, urine, other bodily fluids or matter, voice print, retinal image, and the descriptions thereof, and all other corporal identification factors, and said factors' physical counterparts in any form, and all records, record numbers and information pertaining thereto;

Form S.A. # 453516          Secured Party; Darin-Duane: Baker-El
Darin-Duane For the Security Agreement 2022 by the Darin-Duane: Baker-El
Page 5/12

Page 5/12

21. All biometrics data, records, information, and processes not elsewhere described, the use thereof, and the use of the information contained therein or pertaining thereto;

22. All rights to obtain, use, request, or refuse or authorize the administration of, any food, beverage, nourishment or water, or any substance to be infused or injected into, or affecting the body by any means whatsoever;

23. All rights to request, refuse, or authorize the administration of any drug, manipulation, material, process, procedure, ray, or wave which alters, or might alter the present or future state of the body, mind, spirit, or will by any means, method or process whatsoever;

24. All keys, locks, lock combinations, encryption codes or keys, safes, secured places, and security devices, security programs, and any software, machinery, or devices related thereto;

25. All rights to access and use utilities upon payment of the same unit costs as the comparable units of usage offered to most-favored customers, inter alia, cable, electricity, garbage, gas, internet, satellite, sewage, telephone, water, www (computer services), and all other methods of communication, energy transmission, and food or water distribution;

26. All rights to barter, buy, contract, sell, or trade ideas, products, services or work;

27. All rights to create, invent, adopt, utilize, or promulgate any system or means of currency, money, medium of exchange, coinage, barter, economic exchange, bookkeeping, record keeping, and the like;

28. All rights to use any free, rented, leased, fixed, or mobile domicile, as though same were a permanent domicile, free from requirement to apply for or obtain any government license or permission and free from entry, intrusion, or surveillance, by any means, regardless of duration of lease period, so long as any required lease is currently paid or a subsequent three-day grace period has not expired;

29. All rights to manage, maneuver, direct, guide, or travel in any form of automobile or motorized conveyance whatsoever without any requirement to apply for or obtain any government license, permit, certificate, or permission of any kind whatsoever;

30. All rights to marry and procreate children, and to rear, educate, train, guide, and spiritually enlighten any such children, without any requirement to apply for or obtain any government license, permit, certificate, or permission of any kind whatsoever;

31. All rights to buy, sell, trade, grow, raise, gather, hunt, trap, angle, and store food, fiber, and raw materials for shelter, clothing and survival;

32. All rights to exercise freedom of religion, worship, use of sacraments, spiritual practice, and expression without any abridgment of free speech, or the right to publish, or the right to peaceably assemble, or the right to petition Government for redress of grievances, or petition any military force of the United States for physical protection from threats to the safety and integrity of person or property from either "public" or "private" sources;

33. All rights to Keep and Bear Arms for self-defense of self, family, and parties entreating physical protection of person or property;

34. All rights to create, preserve, and maintain inviolable, spiritual sanctuary and receive into same any and all parties requesting safety and shelter;

35. All rights to create documents of travel of every kind whatsoever, inter alia, those signifying diplomatic status and immunity as a free, independent, and Sovereign State-in-fact;

36. All claims of ownership or certificates of title to the corporeal and incorporeal hereditaments, hereditary succession, and all innate aspects of being, i.e. mind, body, soul, free will, faculties, and self;

37. All rights to privacy and security in person and property, inter alia, all rights to safety and security of all household or sanctuary dwellers or guests, and all papers and effects belonging to DEBTOR or any household or sanctuary dwellers or guests, against governmental, quasi-governmental, defacto governmental, or private intrusion, detainer, entry, seizure, search, surveillance, trespass, assault, summons, or warrant, except with proof of superior claim duly filed in the Commercial Registry by any such intruding party, notwithstanding whatever purported authority, warrant, order, law, or color of law may be promulgated as the authority for any such intrusion, detainer, entry, seizure, search, surveillance, trespass, assault, summons, or warrant;

38. All names used and all Corporations Sole executed and filed, or to be executed and filed, under said names;

39. All intellectual property, inter alia, all speaking and writing;

40. All signatures and seals;

41. All present and future retirement incomes, and rights to such incomes, issuing from any of DEBTOR's accounts;

42. All present and future medical and healthcare rights, and rights owned through survivorship, from any of DEBTOR's accounts;

COPY

43. All applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records and records numbers held by any entity, for any purpose, however acquired, as well as the analyses and uses thereof, and any use of any information and images contained therein, regardless of creator, method, location, process, or storage form, inter alia, all processed algorithms analyzing, classifying, comparing, compressing, displaying, identifying, processing, storing, or transmitting said applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records and records numbers, and the like;

44. All library cards,

45. All credit, charge and debit cards, and mortgages, notes, applications, card numbers, and associated records and information;

46. All credit of DEBTOR;

47. All traffic citations/tickets;

48. All parking citations/tickets;

49. All court cases and judgments, past, present and future, in any court whatsoever, and all bonds, orders, warrants, and other matters attached thereto or derived there from;

50. All precious metals, bullion, coins, jewelry, precious jewels, semi-precious stones, mounts, and any storage boxes within which said items are stored;

51. All tax correspondence, filings, notices, coding, record numbers, and any information contained therein, wherever and however located, and no matter by whom said information was obtained, compiled, codified, recorded, stored, analyzed, processed, communicated, or utilized;

52. All bank accounts, bonds, certificates of deposit, drafts, futures, insurance policies, investment securities, Individual Retirement Accounts, money market accounts, mutual funds, notes, options, puts, calls, pension plans, savings accounts, stocks, warrants, 401-ks, and the like;

53. All accounts, deposits, escrow accounts, lotteries, overpayments, prepayments, prizes, rebates, refunds, returns, Treasury Direct Accounts, claimed and unclaimed funds, and all records and records numbers, correspondence, and information pertaining thereto or derived there from;

54. All cash, coins, money, Federal Reserve Notes, and Silver Certificates;

55. All drugs, herbs, medicine, medical supplies, cultivated plants, growing plants, inventory, ancillary equipment, supplies, propagating plants, and seeds, and all related storage facilities and supplies;

56. All products of and for agriculture, and all equipment, inventories, supplies, contracts, accoutrements involved in the planting, tilling, harvesting, processing, preservation, and storage of all products of agriculture;

57. All farm, lawn, and irrigation equipment, accessories, attachments, hand-tools, implements, service equipment, parts and supplies, and storage sheds and contents;

58. All fuel, fuel tanks, containers, and involved or related delivery systems;

59. All metal-working, wood working, and other such machinery, and all ancillary equipment, accessories, consumables, power tools, hand tools, inventories, storage cabinets, toolboxes, work benches, shops and facilities;

60. All camping, fishing, hunting, and sporting equipment, and all special clothing, materials, supplies, and baggage related thereto;

61. All rifles and guns and related accessories, and ammunition and the integral components thereof;

62. All radios, televisions, communication equipment, receivers, transceivers, transmitters, antennas, and towers, and all ancillary equipment, supplies, computers, software programs, wiring and related accoutrements and devices;

63. All power generating machines or devices, and all storage, conditioning, control, distribution, wiring and ancillary equipment pertaining to or attached thereto;

64. All computers and computer systems and the information contained therein, as well as all ancillary equipment, printers and data compression or encryption devices and processes;

65. All office and engineering equipment, furniture, ancillary equipment, drawings, tools, electronic and paper files, and items related thereto;

66. All water wells and well drilling equipment, and all ancillary equipment, chemicals, tools and supplies;

67. All shipping, storing and cargo containers, and all chassis, truck trailers, vans, and the contents thereof; whether on-site, in-transit, or in storage anywhere;

68. All building materials and prefabricated buildings, and all components or materials pertaining thereto, before or during manufacture, transportation, storage, building, erection, or vacancy while awaiting occupancy thereof;

69. All communications and data, and the methods, devices, and forms of information storage and retrieval, and the products of any such stored information;

70. All books, drawings, magazines, manuals, and reference materials regardless of physical form;

71. All artwork, paintings, etchings, photographic art, lithographs, and serigraphs, and all frames and mounts pertaining or affixed thereto;

72. All rights, ability, and products relating to artistic expression in whatever form be it tangible or intangible;

73. All food, and all devices, tools, equipment, vehicles, machines, and related accoutrements involved in food preservation, preparation, growth, transport, and storage;

74. All construction machinery and all ancillary equipment, supplies, materials, fuels, fuel additives, supplies, materials, and service equipment pertaining thereto;

75. All medical, dental, optical, prescription, and insurance records, records numbers, and information contained in any such records or pertaining thereto;

76. The Will of the DEBTOR;

77. All inheritances gotten or to be gotten;

78. All wedding bands and rings, watches, wardrobe, and toiletries;

79. All household goods and appliances, linen, furniture, kitchen utensils, cutlery, tableware, cooking utensils, pottery, antiques;

80. All businesses, corporations, companies, trusts, partnerships, limited partnerships, organizations, proprietorships, and the like, now owned or hereafter acquired, and all books and records thereof and there from, all income there from, and all accessories, accounts, equipment, information, inventory, money, spare parts, and computer software pertaining thereto;

81. All packages, parcels, envelopes, or labels of any kind whatsoever which are addressed to, or intended to be addressed to, DEBTOR, whether received or not received by DEBTOR;



82. All telephone numbers;

83. Any property not specifically listed, named, or specified by make, model, serial number, etc., is expressly herewith included as collateral of DEBTOR.

## ADVISORY

All instruments and documents referenced/itemized above are accepted for value, with all related endorsements, front and back, in accordance with UCC § 3-419 and House Joint Resolution 192 of June 5, 1933. This Security Agreement is accepted for value, property of the Secured Party, and not dischargeable in bankruptcy court as the Secured Party's property is exempt from third-party levy. This Security Agreement supersedes all previous contracts or security agreements between DEBTOR and the Secured Party.

DEBTOR agrees to notify all of DEBTORS former creditors, would-be creditors, and any would-be purchasers of any herein-described Collateral, of this Security Agreement, and all such personages are expressly so-noticed herewith.

The Security Agreement devolves on the Secured Party's heirs and assigns, which are equally as authorized, upon taking title to this Security Agreement, as Secured Party to hold and enforce said Security Agreement via non-negotiable contract, devise, or any lawful commercial remedy.

## DEFAULT

The following shall constitute the events of default hereunder:

1. Failure by DEBTOR to pay any debt secured hereby when due;

2. Failure by DEBTOR to perform any obligations secured hereby when required to be performed;

3. Any breach of any warranty by DEBTOR contained in this Security Agreement; or

4. Any loss, damage, expense, or injury accruing to Secured Party by virtue of the transmitting-utility function of DEBTOR.

The Secured Party reserves the right to satisfy any judgment, lien, levy, debt, or obligation, whether unsecured, secured, or purported to be secured, against DEBTOR by executing a bill of exchange against the Fidelity Bond registered herewith.

COPY

NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT
NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL

Applicable to all successors and assigns

SIGNATURES

The Secured Party executes this Security Agreement certified and sworn on the Secured Party's unlimited liability true, correct, and complete, and accepts all signatures in accord with UCC § 3-419.

DARIN DUANE BAKER, DEBTOR

_____

Darin-Duane: Baker-El, Secured Party

ACKNOWLEDGEMENT

County of Los Angeles )
                       ) Scilicet
California State       )

SUBSCRIBED TO AND SWORN before me this ___12th___ day of FEBRUARY, A.D. 2022, a Notary, that Darin-Duane: Baker-El, personally appeared and known to me to be the man whose name subscribed to the within instrument and acknowledged to be the same.

_____ Seal:
Notary Public
My Commission expires ___June 16, 2025___

JOHNNY A. VILLALOBOS
Notary Public - California
Los Angeles County
Commission # 2358513
My Comm. Expires Jun 16, 2025

See Attached CA Notary Page

Form S.A. # 453516        Secured Party; Darin-Duane: Baker-El
For the Security Agreement 2022 by the Darin-Duane: Baker-El
Page 12/12

COPY

**CALIFORNIA ACKNOWLEDGMENT**                                      CIVIL CODE § 1189

┌─────────────────────────────────────────────────────────────────────────┐
│ A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document │
│ to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. │
└─────────────────────────────────────────────────────────────────────────┘

State of California

County of Los Angeles                          }

On February 12 , 2022 before me, _____ Johnny A. Villalobos, Notary Public _____,
       *Date*                         *Here Insert Name and Title of the Officer*

personally appeared Darin - Duane : Baker - El
                               *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

> JOHNNY A. VILLALOBOS
> Notary Public - California
> Los Angeles County
> Commission # 2358513
> My Comm. Expires Jun 16. 2025

I certify under PENALTY OF PERJURY under the
laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
*Place Notary Seal and/or Stamp Above*                   *Signature of Notary Public*

──────────────────── **OPTIONAL** ────────────────────

*Completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Security Agreement _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| □ Corporate Officer – Title(s): _____ | □ Corporate Officer – Title(s): _____ |
| □ Partner – □ Limited □ General | □ Partner – □ Limited □ General |
| □ Individual     □ Attorney in Fact | □ Individual     □ Attorney in Fact |
| □ Trustee     □ Guardian or Conservator | □ Trustee     □ Guardian or Conservator |
| □ Other: _____ | □ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |

©2019 National Notary Association

## POWER OF ATTORNEY
Limited



Know All Men by These Presents: That I, DARIN DUANE BAKER, the Debtor, corporate entity, and 'ens legis,' the undersigned, hereby make, constitute and appoint Darin-Duane: Baker-El, herein, the flesh and blood man, a living soul, the Secured Party/Creditor as my true and lawful Attorney-in-fact for me and in my corporate capacity (LLC), place and stead and for my personal and commercial use and benefit:

1.  To ask, demand, request, file, sue, recover, register, collect and receive each and every sum of money, credit, account legacy, bequest, interest, dividend, annuity and demand (which now is or hereafter shall become due, owing or payable or dischargeable) belonging to or accepted or claimed by me, or presented to the DEBTOR; DARIN DUANE BAKER, (a corporate entity) and to use and take any lawful and/or commercial means necessary for the recovery thereof by legal or commercial process or otherwise, and to execute and deliver or receive a satisfaction or release therefore, together with the right and power to settle, compromise, compound and or discharge any claim or initiate any administrative claim for damages or make any necessary demands;

2.  To exercise any or all of the following powers as to all kinds of personal property, private property and any property, goods, wares, and merchandise, choses in action and other property in possession or where a security interest is established and to or in other actions;

3.  To secure by private registration the interest, or the security interest in any or all property where necessary, to accept for value and to discharge any and all debts for fine, fee, or tax where necessary, to cause the commercial adjustment of any such account held open against the DEBTOR- DARIN DUANE BAKER; to use where necessary any Sight Drafts/Money Orders, Bills of Exchange to finalize any of the above in my behalf;

4.  To open any Checking accounts whereupon being 'closed,' to discharge any fines, fees, taxes and debts via adjustments and set-off.

5.  To create, amend, supplement and or terminate any trust or the RES created by the government (District of Columbia) and ratified or exercised in any manner by any other State;

6.  To request, retrieve, file, submit, or otherwise, any papers in my behalf for any matter whether commercial, quasi-judicial, administrative, or otherwise and to sign my legal corporate name as my act and deed, to execute and deliver same for my redress or remedy, claim, suit or otherwise.

Form P.O.A # POA-453516-DDB Secured Party; Darin-Duane: Baker-El
For the Power of Attorney 2021 by the Darin-Duane: Baker-El
Page 1/2

GIVING AND GRANTING, unto my said Attorney-in-fact full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about all matters as fully to all intents and purposes as I might or could do if I was personally present, and hereby ratifying all that my Attorney-in-fact shall lawfully do or cause to be done by virtue of these presents. The powers and authority hereby conferred upon my said Attorney-in-fact shall be applicable to all real and private property, personal property or interest therein now owned or hereinafter acquired by me as the 'ENS LEGIS'/LLC and wherever situate, and as evidenced by a filed security interest.

My said Attorney-in-fact: Darin-Duane: Baker-El is empowered hereby to determine in his sole discretion the time, purpose for and manner in which any power herein conferred upon him shall be exercised, and the conditions, provisions and covenants of any instrument(s) or document(s) which may be executed by him pursuant hereto; and in the acquisition or distribution of real, personal or private property, my said Attorney-in-fact shall have exclusive power to fix the terms or amounts thereof for cash, funds, credit and/or affecting all property, including rights, titles, interest to same and if on/for credit-with or without security.

When the context so requires, the masculine gender includes the feminine and/or neuter, and the singular numbers include the plural.

WITNESS my hand this __|⸺__ day of FEBRUARY 2022, A.D.

DARIN DUANE BAKER

Secured Party *inalienable only has reserved*
/S/ | *Darin: Duane: Baker — El*
Darin-Duane: Baker-El

## ACKNOWLEDGEMENT

County of Los Angdes
                    ) Scilicet
California state   )

SUBSCRIBED TO AND SWORN before me this 12th day of FEBRUARY, 2022, A.D., a Notary, that Darin-Duane: Baker-El, personally appeared and known to me to be the man whose name subscribed to the within instrument and acknowledged to be the same.

_____ Seal;
Notary Public
My Commission expires June 16, 2025

JOHNNY A. VILLALOBOS
Notary Public - California
Los Angeles County
Commission # 2358513
My Comm. Expires Jun 16, 2025

See Attached CA Notary Page

Form P.O.A # POA-453516-DDB Secured Party; Darin-Duane: Baker-El
For the Power of Attorney 2021 by the Darin-Duane: Baker-El
Page 2/2

COPY

**CALIFORNIA ACKNOWLEDGMENT**                                   CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of _Los Angeles_        }

On _February 12_, 2022 before me, _____Johnny A. Villalobos, Notary Public_____,
        Date                           *Here Insert Name and Title of the Officer*

personally appeared _Darin-Duane: Baker-El_
                                  *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> JOHNNY A. VILLALOBOS
> Notary Public - California
> Los Angeles County
> Commission # 2358513
> My Comm. Expires Jun 16, 2025

Signature _____
                     *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

━━━━━━━━━━━━━━━ OPTIONAL ━━━━━━━━━━━━━━━

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Power of Attorney_

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee       ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee       ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

---

©2019 National Notary Association

# HOLD HARMLESS
# AND INDEMNITY AGREEMENT COPY

Number: 453516-DDB

*Non-Negotiable – Private Between Parties*

**PARTIES:**

*Debtor:*
DARIN DUANE BAKER©
P.O. Box 4804
CALIFORNIA [91607]

*Creditor:*
Darin-Duane: Baker-El
C/O 12020 VALLEY VILLAGE
CALIFORNIA [91607]

… and any and all derivatives and variations in the spelling of said name.

Debtor's Social Security Account Number: ▮▮▮▮▮▮▮

This Hold-Harmless and Indemnity Agreement is mutually agreed upon and entered into on this 01/31/2022 between the Juristic Person: "DARIN DUANE BAKER©," any and all derivatives and variations in spelling of said name hereinafter jointly and severally "DEBTOR," except, "Darin-Duane: Baker-El," the living, breathing, flesh-and-blood man, known by the distinctive appellation Darin-Duane: Baker-El, hereinafter, CREDITOR."

For valuable consideration DEBTOR hereby expressly agrees and covenants, without benefit of discussion, and without division, that DEBTOR holds harmless and undertakes the indemnification of CREDITOR from and against any and all claims, legal actions, orders, warrants, judgments, demands, liabilities, losses, depositions, summonses, lawsuits, costs, fines, liens, levies, penalties, damages, interests, and expenses whatsoever both absolute and contingent, as are due and as might become due, now existing and as might hereafter arise, and as might be suffered/incurred by, as well as imposed on, DEBTOR for any reason, purpose, and cause whatsoever. Debtor does hereby and herewith expressly covenant and agree that Creditor shall be considered an accommodation party, not a surety, for the Debtor.

### Defined: Glossary of Terms.

As used in this Hold-Harmless and Indemnity Agreement, the following words and terms express the meanings set forth as follows, non obstante:

**Appellation.** In this Hold-Harmless and Indemnification Agreement, the term "appellation" means: A general term that introduces and specifies a particular term which may be used in addressing, greeting, calling out for, and making appeals of a particular living, breathing, flesh-and-blood man.

**Conduit**. In this Hold-Harmless and Indemnity Agreement the term "conduit" signifies a means of transmitting and distributing energy and the effects/produce of labor, such as goods and services, via the name, "DARIN DUANE BAKER©," also known by any and all derivatives and variations in the spelling of said name of Debtor except all derivatives and variations in the spelling of the name of "Darin-Duane: Baker-El," Creditor.

**Creditor**. In this Hold-Harmless and Indemnity Agreement the term "Creditor" means "Darin-Duane: Baker-El" and all derivatives and variations in the spelling of the name of "Darin-Duane: Baker-El".

**Debtor**. In this Hold-Harmless and Indemnity Agreement the term "Debtor" means "DARIN DUANE BAKER©" and all derivatives and variations in the spelling of said name except "Darin-Duane: Baker-El" and all derivatives and variations in the spelling of "Darin-Duane: Baker-El".

**Derivative.** In this Hold-Harmless and Indemnity Agreement the word "derivative" means coming from another; taken from something preceding; secondary; that which has not the origin in itself, but obtains existence from something foregoing and of a more primal and fundamental nature; anything derived from another.

**Ens legis**. In this Hold-Harmless and Indemnity Agreement the term "ens legis" means a creature of the law; an artificial being, such as a corporation, considered as deriving its existence entirely from the law, as contrasted with a natural person.

**Hold-Harmless and Indemnity Agreement**. In this Hold-harmless and Indemnity Agreement the term "Hold-harmless and Indemnity Agreement" means this Hold-harmless and Indemnity Agreement No. 453516-DDB as this Hold-harmless and Indemnity Agreement may be amended and modified in accordance with the agreement of the parties signing hereunder, together with all attachments, exhibits, documents, endorsements, and schedules re: this Hold-Harmless and Indemnity Agreement attached "DARIN DUANE BAKER©." In this Hold-harmless and Indemnity Agreement the "DARIN DUANE BAKER©" means "DARIN DUANE BAKER©" and any and all derivatives and variations in the spelling of said name except, "Darin-Duane: Baker-El" and any and all derivatives and variations in the spelling of the name "Darin-Duane: Baker-El." Common Law Copyright © 04/10/1991 by "Darin-Duane: Baker-El." All Rights Reserved.

In this Hold-Harmless and Indemnity Agreement the term "Darin-Duane: Baker-El" means the sentient, living, flesh-and-blood man identified by the distinctive appellation Darin-Duane: Baker-El and all derivatives and variations in the spelling of the name

"DARIN DUANE BAKER."   All rights are reserved re: use of DARIN DUANE BAKER." Autograph Common Law Copyright 04/10/1991. 

**Juristic person**.   In this Hold-Harmless and Indemnity Agreement the term "juristic person" means an abstract, legal entity ens legis, such as a corporation, created by construct of law and considered as possessing certain legal rights and duties of a human being; an imaginary entity, such as Debtor, i.e. DARIN DUANE BAKER© which, on the basis of legal reasoning, is legally treated as a human being for the purpose of conducting commercial activity for the benefit of a biological, living being, such as Creditor.

"From the earliest times the law has enforced rights and exacted liabilities by utilizing a corporate concept – by recognizing, that is, juristic persons other than human beings. The theories by which this mode of legal operation has developed, has been justified, qualified, and defined are the subject matter of a very sizeable library, the historic roots of a particular society, economic pressures, philosophic notions, all have had their share in the law's response to the ways of men in carrying on their affairs through what is now the familiar device of the corporation --------- Attribution of legal rights and duties to a juristic person other than man is necessarily a metaphorical process. And the none the worse for it. No doubt, 'Metaphors in law are to be narrowly watched.' Cardozo, J., in Berkey v. Third Avenue R. Co., 244 N.Y. 84, 94, 'But all instruments of thought should be narrowly watched lest they be abused and fail in their service to reason.' See U.S. v. SCHOPHONY CORP. OF AMERICA, 333 U.S. 795; 68 S. Ct. 855; 1948 U.S."

**Observation**.   "A person has a property right in the use of his or her name which person may transfer or assign." Gracey v. Maddin, 769 S.W. 2nd 497 (Tenn. Ct. App. 1989).

**Living, breathing, flesh-and-blood man**.   In this Private Agreement the term "living, breathing, flesh-and-blood man means the Creditor: "Darin-Duane: Baker-El", a sentient, living being, as distinguished from an artificial legal construct, ens legis, i.e. a juristic person created by the construct of law.

**Non obstante**.   In this Private Agreement the term "non obstante" means: Words anciently used in public and private instrument with the intent of precluding, in advance, any interpretation other than certain declared objects and/or purposes.

"There, every man is independent of all laws, except those prescribed by nature. He is not bound by any institutions formed by his fellowmen without his consent." CRUDEN v. NEAL, 2 N.C. 338 (1796) 2 S.E., 70.

**Sentient, living, being**.   In this Private Agreement the term "sentient, living being" means the Creditor, i.e. "Darin-Duane: Baker-El", a living, breathing, flesh-and-blood man, as distinguished from an abstract legal construct such as an artificial entity, juristic corporation, partnership, association, and the like.

**Transmitting utility**.   In this Hold-Harmless and Indemnity Agreement the term "transmitting utility" means a 'commercial transmitting utility,' i.e., a conduit for all commercial presentments and matters passed to or presented to the Debtor, i.e. DARIN DUANE BAKER©.

**UCC**. In this Hold-Harmless and Indemnity Agreement the term "UCC" means Uniform Commercial Code.

This Hold-Harmless and Indemnity Agreement No. 453516-DDB is dated: 01/31/2022

Debtor: DARIN DUANE BAKER©

_____

Debtor's Signature

Creditor accepts Debtor's signature in accord with UCC §§ 1-201(39), 3-401 (b).

Creditor: Darin-Duane: Baker-El

Creditor's Signature – Autograph Common Copyright© 04/10/1991
By Darin-Duane: Baker-El.  All Rights Reserved

## ACKNOWLEDGEMENT

County of Los Angeles )
            ) Scilicet
California state        )

SUBSCRIBED TO AND SWORN before me this ___12th___ day of FEBRUARY, A.D. 2022, a Notary, that Darin-Duane: Baker-El, personally appeared and known to me to be the man whose name subscribed to within instrument and acknowledged to be the same.

_____ Seal;

Notary Public
My Commission expires ___June 16, 2025___

JOHNNY A. VILLALOBOS
Notary Public - California
Los Angeles County
Commission # 2358513
My Comm. Expires Jun 16, 2025

See Attached CA Notary Page

Form H.H.I.A. # 453516-DDB          Secured Party; Darin-Duane: Baker-El
For the HOLD HARMLESS AGREEMENT 2022 by the Darin-Duane: Baker-El
Page 4

**COPY**

**CALIFORNIA ACKNOWLEDGMENT**

CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On February 12, 2022 before me, Johnny A. Villalobos, Notary Public
        *Date*                               *Here Insert Name and Title of the Officer*

personally appeared Darin-Duane: Baker-El
                                    *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

JOHNNY A. VILLALOBOS
Notary Public · California
Los Angeles County
Commission # 2358513
My Comm. Expires Jun 16, 2025

*Place Notary Seal and/or Stamp Above*

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    *Signature of Notary Public*

─────────────── **OPTIONAL** ───────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: Hold Harmless and Indemnity Agreement

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer – Title(s): _____ | ☐ Corporate Officer – Title(s): _____ |
| ☐ Partner – ☐ Limited ☐ General | ☐ Partner – ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |

©2019 National Notary Association